Bobby D. FRENCH, Appellant,

v.

GROVE MANUFACTURING COMPANY,
and Glidewell Construction Company,
Inc., Appellees.

No. 80–1775.

United States Court of Appeals,
Eighth Circuit.

Submitted May 21, 1981.

Decided Aug. 5, 1981.

E. C. Gilbreath, Mark A. Moll, Jones, Gilbreath & Jones, Thomas B. Pryor, Pryor, Robinson, Taylor & Barry, Attys. at Law, Fort Smith, Ark., for appellee Grove.

Walker Dale Garrett, Davis, Bassett, Cox & Wright, Fayetteville, Ark., for appellee, Glidewell Construction Company, Inc.

Before HEANEY and BRIGHT, Circuit Judges, and HARRIS,* Senior District Judge.

HEANEY, Circuit Judge.

Bobby D. French appeals from an adverse jury decision in his action to recover damages for personal injuries resulting from a crane accident. French alleged that the manufacturer of the crane, Grove Manufacturing, Inc., was liable under theories of strict liability, breach of warranty and negligence. He also maintained that Glidewell Construction Company, Inc., was liable for the negligence of its alleged borrowed servant who operated the crane. Because we determine that the trial court submitted the case to the jury under erroneous instructions, we reverse and remand.

I

French was an ironworker under the general employment of Holmes Erection, Inc., a company engaged in the business of leasing heavy construction equipment. On August 2, 1977, Holmes leased a crane to Glidewell for the purpose of removing concrete slabs from one of Glidewell's construction sites. As part of the agreement, three of Holmes' employees, a crane operator and two ironworkers, accompanied the crane. French was one of the ironworkers responsible for "rigging" or securing the loads lifted by the crane.

Shortly after French and his coworkers arrived at the construction site on the day of the accident, the crane operator extended the telescoping boom of the crane without removing the "jib pins" that attached the jib or extension boom to the end of the main crane boom. Because the jib pins

---

* THE HONORABLE OREN HARRIS, United States Senior District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

were left in place, the jib swung down from the crane like a pendulum, striking French in the head, shoulder and arm. He suffered a fractured skull and a crushed right arm; he was rendered unconscious for nearly a week.

French sued Glidewell under the theory that the crane operator, although in the general employ of Holmes Erection, was the borrowed servant of Glidewell and, therefore, his liability should be imputed to Glidewell. French's complaint against Grove Manufacturing was essentially based on the proposition that the crane it manufactured was defective because it was not equipped with a warning or fail-safe device designed to prevent the extension of the main boom with the jib pins in place.

On appeal, French argues that the trial court's jury instructions improperly required him to prove elements in addition to those essential under the Arkansas law of strict liability. He also maintains that the court erred in instructing the jury that French had to prove that he was not an employee of Glidewell but that the crane operator was. Finally, French contends that the district court asked questions of the witnesses and instructed the jury in such a manner as to mislead the jury and cause him prejudice.

## II

French argues that the district court erred in instructing the jury that French had the burden of proving (1) that an alternative safer design was available and feasible from the standpoint of cost, practicality and technological possibility, and (2) that the crane contained some danger other than the danger posed by all cranes and that such danger was not and

would not reasonably be appreciated by an ordinarily prudent person.[1]

We agree with French that, under the law of Arkansas, he is not required to bear the burden of showing that an alternative safer design was available and feasible in terms of cost, practicality and technological possibility. A cause of action based on strict liability in tort became available in Arkansas in 1973 when the legislature enacted Ark.Stat.Ann. § 85–2–318.2. That statute, in large part a codification of the Restatement (Second) of Torts § 402A, provides:

> A supplier of a product is subject to liability in damages for harm to a person or to property if:
>
> (a) the supplier is engaged in the business of manufacturing, assembling, selling, leasing or otherwise distributing such product;
>
> (b) the product was supplied by him in a defective condition which rendered it unreasonably dangerous; and
>
> (c) the defective condition was a proximate cause of the harm to person or to property.

As originally enacted, this legislation contained no definitions or other explanations of the terms used in the statute. In 1979, however, the Arkansas legislature passed the Arkansas Product Liability Act of 1979, Ark.Stat.Ann. §§ 34–2801 to 34–2807, which establishes definitions and other standards applicable to product liability actions, including "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." Ark.Stat.Ann. § 34–2802(e).

---

1. The challenged instructions read as follows:

   In order for Bobby French to establish his claim that the design of the Grove Crane was defective or negligent, Bobby French has the burden of proving by a preponderance of the evidence, that an alternative safer design was available and that the alternative design was feasible from the standpoint of cost, practicality and technological possibility.

   In order for Bobby French to recover against Grove on the theory of defective design or negligent design, he has the burden of proving by a preponderance of the evidence that the design of the crane which he alleges was unreasonably dangerous contained some danger other than those which all cranes pose, which danger was not and would not reasonably be appreciated by an ordinarily prudent person.

A threshold question is whether the Product Liability Act of 1979, enacted two years after the accident occurred, should govern the proceedings in this case. We have no difficulty concluding that it should. Although the general rule is that statutes are not to be given retroactive effect unless the legislature has clearly expressed a contrary intention, an exception is recognized for procedural or remedial legislation that creates no new substantive rights or duties. *See Forrest City Machine Works, Inc. v. Aderhold,* 273 Ark. 33, 616 S.W.2d 720 (1981); *Harrison v. Matthews,* 235 Ark. 915, 362 S.W.2d 704, 705 (1962); *State ex rel. Moose v. Kansas City & Memphis Ry. & Bridge Co.,* 117 Ark. 606, 174 S.W. 248, 251 (1914). The Product Liability Act of 1979 falls within this exception. The Act merely sets forth definitions of terms to be used, establishes a limitations period and enumerates defenses and indemnification remedies available in product liability actions. No new causes of action or substantive rights or liabilities were created by passage of this Act. We find, therefore, that its provisions may be applied retrospectively to this cause of action brought under the Arkansas strict liability statute.

As noted, the Arkansas strict liability statute requires the plaintiff to prove that the product was supplied in a "defective condition which rendered it unreasonably dangerous." Ark.Stat.Ann. § 85–2–318.-2(b). Those terms are defined in the Arkansas Product Liability Act as follows:

(d) "Defective condition" means a condition of a product that renders it unsafe for reasonably foreseeable use and consumption.

\*      \*      \*      \*      \*      \*

(g) "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer or user who acquires or uses such product, assuming the ordinary knowledge of the community, or of similar buyers, users or consumers, as to its characteristics, propensities, risks, dangers and proper and improper uses, as well as any special knowledge, training or experience possessed by the particular buyer, user or consumer or which he or she was required to possess.

Ark.Stat.Ann. § 34–2802(d) & (g).

It is apparent that these definitions of the key terms in the strict liability statute contain no requirement that a feasible and safer alternative be proven by the plaintiff and we see no reason to impose that requirement.[2] Indeed, another section of the Product Liability Act expressly provides that such "state of the art" factors are "considerations" that *may* be weighed by the trier of fact:

*Considerations for trier of fact.*—In determining the liability of the manufacturer the state of scientific and technological knowledge available to the manufacturer or supplier at the time the product was placed on the market, rather than at the time of the injury, may be considered as evidence. Consideration may also be given to the customary designs, methods, standards, and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products.

Ark.Stat.Ann. § 34–2805.

Thus, it is clear that under Arkansas law the existence, practicality, and technological feasibility of an alternative safe design are not necessary elements of the plaintiff's cause of action, but rather are merely factors that may be considered by the jury in

---

**2.** Moreover, even if the Product Liability Act of 1979 were not to be given retroactive application, we are convinced that the challenged jury instruction should be found invalid under Arkansas law. The Arkansas strict liability statute, Ark.Stat.Ann. § 85–2–318.2, closely follows the wording of the Restatement (Second) of Torts § 402A. The comments to section 402A define "defective condition" and "unreasonably dangerous" in a manner very similar to the definitions contained in the Arkansas Product Liability Act of 1979. *See* comments g, h & i. The Restatement definitions do not contain any requirement that the plaintiff prove the existence of an alternative, feasible safe design. Consequently, we conclude that the Arkansas legislature intended to impose no such requirement when it enacted the strict liability statute based on the Restatement.

determining whether a product was supplied in a defective condition that rendered it unreasonably dangerous. The district court erred in ruling to the contrary; a new trial is required to correct the error.

■ We find no merit to French's objection to the jury instruction requiring him to prove that Grove's crane "contains some danger other than those all cranes pose, which danger was not and would not reasonably be appreciated by an ordinarily prudent person." That instruction, although not exceedingly clear, is consistent with the Arkansas statutory definition of "unreasonably dangerous." *See* Ark.Stat.Ann. § 34–2802(g). Accordingly, the trial court committed no error in giving it.

### III

■ French next contends that the district court erred by instructing the jury that French had the burden of proving that he was not an employee of Glidewell Construction at the time of the accident. It is undisputed that both French and the crane operator were in the general employ of Holmes Erection and that Glidewell contracted with Holmes for the crane and crew. French maintains that the crane operator was under the direction and control of Glidewell and was thus a borrowed servant of Glidewell. Therefore, French asserts, Glidewell is responsible for his negligent acts. *See Watland v. Walton,* 410 F.2d 1, 3 (8th Cir. 1969).

In French's view, his own employment status is irrelevant to his right to maintain an action against Glidewell for the negligence of its borrowed servant. Glidewell responds that French's employment status is critical because, if both the crane operator and French were employees of Glidewell, French's negligence action would be barred by the exclusive remedy provision of the Arkansas Workers' Compensation Law, Ark.Stat.Ann. §§ 81–1301 to 81–1349.

Both parties are half correct. Section 81–1304 of the Workers' Compensation Act provides that the rights and remedies granted by the Act shall be exclusive of all other rights and remedies, and "the negligent acts of a co-employee shall not be imputed to the employer." Ark.Stat.Ann. § 81–1304. That provision goes on, however, to state that "if an employer fails to secure the payment of compensation, as required by the Act, an injured employee * * may, at his option, elect to claim compensation under this Act or to maintain a legal action in court for damages on account of such injury * * *." *Id.* French's lawsuit, therefore, is not necessarily barred by the Workers' Compensation Law, even if both he and the crane operator were borrowed servants of Glidewell; if Glidewell failed to "secure the payment of compensation, as required by the Act," French is entitled to bring an action for damages. Consequently, the district court erred in issuing a binding instruction that French could recover only if he proved that he was not an employee of Glidewell.

■ Glidewell concedes that it has not paid anything to French, but it asserts that it was not required to do so unless French made a claim against it. Furthermore, Glidewell argues that, under the Act, an employer secures payment of compensation "[b]y insuring and keeping insured the payment of such compensation with any carrier authorized to write workmen's compensation insurance * * *." Ark.Stat.Ann. § 81–1336. Glidewell maintains that it was covered by such insurance at the time of the accident.

There is nothing in the record, however, to indicate that Glidewell maintained workers' compensation insurance or that, if it did, French would have been covered by Glidewell's insurance carrier. In our view, if Glidewell wished to defend the negligence action on the ground that the Workers' Compensation Law provided the exclusive remedy, it was required to prove that French was its employee and that it had secured payment as required by the Act. *Cf. Griffin v. Monsanto Co.,* 240 Ark. 420, 400 S.W.2d 492 (1966) (in wrongful death action, summary judgment improper because defendant's affidavits failed to show that plaintiff had a remedy under the

Workers' Compensation Law). This it did not do. To the contrary, Glidewell has consistently maintained that French and his coworkers were not Glidewell employees at the time of the accident. It cannot now assert, in the absence of any evidence, that it had secured payment of compensation to French as required by the Workers' Compensation Law.

Because the district court erred in instructing the jury that French must prove that he was not an employee of Glidewell, we have no alternative but to remand for a new trial.[3] On remand, of course, Glidewell is free to introduce evidence that it secured payment of compensation to French as required by the Arkansas Workers' Compensation Law and that this action is therefore barred by the statute.

### IV

 French's final contention is that the trial court improperly interrogated witnesses and instructed the jury in a prejudicial manner. Specifically, French objects to two occasions when the district court asked witnesses if the accident occurred as a result of the "human error" of the crane operator. He also complains of a jury instruction in which the court told the jurors that they must find for the defendant Grove Manufacturing if they determined that the "human error [of the crane operator] was the sole proximate cause of the accident."

We are not persuaded by French's arguments. The court's use of the phrase "human error" cannot be viewed as the kind of improper comment on the evidence that would warrant a finding that the judge abused his discretion. Moreover, the jury instruction cited is not an improper statement of the law when read in context with the further instruction on proximate cause that followed it: "Now this does not mean that the law recognizes only one proximate

cause of damage. To the contrary, if two or more causes work together to produce damage, then you may find that each of them was a proximate cause."

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

**3.** Glidewell argues that any error in submitting this case to the jury is harmless because the evidence was insufficient to support a finding that the crane operator was a borrowed servant of Glidewell. We have reviewed the record and are satisfied that, if properly instructed, the jury could have found that the operator was working under Glidewell's direction and control and was thus its borrowed servant.