939 F.2d 623
 33 Fed. R. Evid. Serv. 740
 Vernon BROWN, Administrator of the Estate of Delmar E.
Toczek, Appellant,
v.
LaCREEK ELECTRIC ASSOCIATION, INC., John Leui, Luella Leui,
and Seedburo Equipment Company, Appellees.
 No. 90-5373SD.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 15, 1991.
Decided July 26, 1991.
 
 Wayne F. Gilbert, Rapid City, S.D., for appellant.
 Thomas Fritz, argued (Steven Helmers, on brief), Rapid City, S.D., for appellees.
 Before McMILLIAN, ARNOLD and LOKEN, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 Delmar Toczek's estate appeals the District Court's[1] denial of its motion for new trial after a jury found in favor of the defendant, LaCreek Electric Association, Inc., in this wrongful-death action. Plaintiff claims the District Court erred in excluding evidence it offered to impeach two of LaCreek's witnesses. We conclude that the District Court's failure to admit the evidence was not error.
 
 
 2
 At the time of his death on August 19, 1987, Delmar Toczek was on the job as an inspector for the Bennett County, South Dakota, office of the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture ("ASCS"). Part of Toczek's job was to sample grain stored in bins by farmers participating in government-loan programs. Toczek used a grain probe--a metal pole with a cup on one end and a "t" shaped handle at the other end--to inspect the grain.
 
 
 3
 Immediately before his death, Toczek was sampling grain from a grain bin located on the farm of John Leui, near Martin, South Dakota. Two electrical wires ran over the top of the bin. The top wire cleared the bin by 6 feet 5 and 1/2 inches, and carried 7,200 volts of electricity. The lower wire was neutral, and did not carry an appreciable amount of electricity. Toczek's grain probe was found at the scene of the accident extended to 7 feet 3 and 1/2 inches. Apparently, as Toczek kneeled on top of the grain bin in order to insert the grain probe into it, the "t" end of the grain probe came into contact with the 7,200-volt wire. Toczek was electrocuted, and died a few hours later.
 
 
 4
 After Toczek's death, his estate brought this wrongful-death action against the manufacturer of the grain probe, Seedburo Equipment Company, the owners of the grain bin, John and Luella Leui, and the owner of the electric lines, LaCreek. The Leuis and Seedburo settled with the estate, leaving LaCreek as the sole defendant at trial.[2] After a trial lasting from May 7 to 11, 1990, the jury returned special interrogatories finding LaCreek negligent and Toczek not contributorily negligent, but finding that Toczek had assumed the risk of injury. The District Court entered judgment for the defendant on May 14, 1990, and plaintiff moved for a new trial. The District Court denied the motion, and plaintiff appeals.
 
 
 5
 Plaintiff's only claim on appeal is that the District Court erred in not allowing it to impeach the testimony of two ASCS supervisors, Virginia Voight and Jameson Todd Hill.[3] Had this impeachment testimony been allowed, plaintiff claims, the jury might not have found that Toczek assumed the risk of his injury. At trial, Voight and Hill testified, via deposition, about Toczek's training from the ASCS concerning the dangers of electricity. Voight, Toczek's immediate supervisor at the time of his death, testified that she trained Toczek. She stated that her training of Toczek included reviewing the ASCS Commodity Inspector's Handbook with him, and going out to a grain-bin site with him. Voight testified that she "felt very comfortable" stating that at the site she had pointed out a high-voltage line running over a bin as a dangerous condition. Trial Transcript at 450. Hill succeeded Voight as ASCS supervisor after Toczek's death. Although Hill never worked with Toczek, he testified that the ASCS Handbook had a specific section concerning the hazards of overhead power. Id. at 480.
 
 
 6
 Plaintiff sought to impeach the testimony of Voight and Hill with the deposition testimony of Earle Lagro, a compliance officer with the Occupational Safety and Health Administration of the United States Department of Labor ("OSHA"). Lagro investigated Toczek's death a week after it occurred. After questioning other ASCS inspectors, Lagro concluded that the inspectors received little or no training "as far as electricity and working on lines" were concerned. Lagro Deposition at 28. Inspectors "were just told to be careful around electricity and high lines." Id. at 29. Lagro also noted that the ASCS Handbook failed to mention the danger of electricity. Lagro's discussions with Voight led him to conclude that she was "unaware she had to provide the safety in this particular situation[,]" id. at 33, and was similarly unaware of the overhead electrical lines on the Leuis' property. Lagro collected the results of his investigation in a report.[4] As a result of the report, OSHA issued a letter of correction to the Bennett County, South Dakota, ASCS office concerning its training of inspectors about unsafe conditions, including electrical hazards.
 
 
 7
 The District Court refused to admit Lagro's deposition testimony as either substantive or impeachment evidence. On appeal, plaintiff does not argue that the deposition should have been admitted as substantive evidence. It claims, instead, that the deposition should have been admitted as impeachment, tending to cast doubt on the credibility of Voight. Plaintiff is correct in asserting that evidence not admissible as substantive evidence may come in for purposes of impeachment. See e.g., Underwood v. Colonial Penn Insurance Co., 888 F.2d 588, 590-91 (8th Cir.1989). We see no abuse of discretion in the District Court's action. Any value that Lagro's testimony had as impeachment of either Voight or Hill was at best indirect and tangential. Lagro's deposition does not ascribe to either of these witnesses any specific statement clearly contradictory of their testimony. If Lagro had said, for example, that Voight had told him that she had never warned Toczek about the dangers of electricity, the Lagro testimony would have had substantial value as impeachment. Lagro's evidence, though, was not this specific. It consisted largely of opinions which he formed after talking with Voight and other, unnamed, employees of LaCreek. The District Court must be given broad latitude in the admission and exclusion of evidence. Whatever slight value as impeachment Lagro's testimony would have had is outweighed by its vagueness and the tendency of Lagro's opinions, formed after the fact, to be unfairly prejudicial to LaCreek.
 
 
 8
 Moreover, exclusion of the evidence, even if it was error, was harmless. At issue was Toczek's personal knowledge of the dangers of electricity, and his assumption of the risk of working close to electrical wires. Substantial evidence other than that presented through Hill and Voight supports the jury's finding that Toczek assumed the risk of his injury. Toczek had been on top of the same bin at least two times to inspect grain in the year before his death. Several witnesses testified that the lines running over the bin were clearly visible, uninsulated electrical wires. The jury saw numerous photographs showing the proximity of the lines to the bin. Reita Moore, manager of LaCreek, testified that the Toczeks received a newsletter called "LaCreek Lines" every month. At least four of the issues received by the Toczeks, and admitted into evidence, cautioned LaCreek customers about the dangers of overhead powerlines. Although one witness, Len Byrne, said he thought Toczek had no experience working with electricity, Toczek's wife stated that she did not know anyone who did not appreciate the danger of electricity, including her husband.
 
 
 9
 It is true, as plaintiff notes, that Voight was the only witness who testified with any specificity about Toczek's personal knowledge of the dangers of electricity, and that LaCreek emphasized her testimony in its closing argument. Perhaps Lagro's testimony would have improved the plaintiff's case somewhat, but we cannot agree that it would have had a significant effect.
 
 
 10
 Affirmed.
 
 
 
 [1]
 The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota
 
 
 [2]
 The Leuis remained parties to the action on LaCreek's cross-claim
 
 
 [3]
 Plaintiff does not claim that the evidence was insufficient to justify a jury verdict of assumption of the risk, or that the District Court gave the jury any incorrect instruction
 
 
 [4]
 The plaintiff also sought to introduce Lagro's report into evidence. The District Court excluded the report on the grounds that it contained hearsay, "lack[ed] the requisite trustworthiness for admissibility[,]" and that its probative value was outweighed by unfair prejudice. Order on Admissibility of OSHA Report, S.D.Civ. 89-5010, May 9, 1990. At oral argument, plaintiff's attorney indicated that the appeal is limited to the exclusion of Lagro's deposition testimony