40 F.3d 946
 Debra CHAMPAGNE, as Personal Representative of the Estate of
Ricky Champagne, and Richard Champagne, as
Personal Representative of the Estate of
Ricky Champagne, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 92-3321.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1993.
Decided Nov. 21, 1994.
 
 Alice R. Senechal, Grand Forks, ND, argued (Roger R. Sundling, on the brief), for appellant.
 Sushma Soni, Dept. of Justice, Washington, DC, argued (Mark B. Stern, on the brief), for appellee.
 Before JOHN R. GIBSON,* MAGILL, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 
 
 1
 In early 1989, Ricky Champagne attempted suicide by taking an overdose of medication. He was admitted to the Indian Health Service hospital in Belcourt, North Dakota (a federal facility), on that day. He was released from the hospital two days later. Less than a month after his release, he committed suicide by shooting himself. He was 18 years old.
 
 
 2
 Mr. Champagne's parents sued the government in federal court under the Federal Tort Claims Act, see 28 U.S.C. Sec. 1346, Secs. 2671-2680, alleging medical malpractice and the consequent wrongful death of their son. After a two-day bench trial, the court entered judgment for the government in 1992. See Champagne v. United States, 836 F.Supp. 684 (D.N.D.1992). The essence of the trial court's findings was that the hospital and Mr. Champagne's father were at fault for Mr. Champagne's death but that the fault of Mr. Champagne himself, which the trial court imputed to his parents, was more than 50 percent of the total fault for his death, id. at 689-90, and therefore barred recovery under North Dakota's comparative fault scheme. See N.D.Cent.Code Sec. 32-03.2-01 through Sec. 32-03.2-12, especially Sec. 32-03.2-02. Mr. Champagne's parents appealed to this court, contending that it was improper for the trial court to consider Mr. Champagne's own actions in allocating the fault for his death.
 
 
 3
 After initial briefing and oral argument, we certified to the North Dakota Supreme Court the questions of whether a suicide victim's fault is to be considered in allocating fault under the North Dakota comparative fault scheme and, if so, whether that fault should be imputed to the parents of the suicide victim in a wrongful death action. See N.D.R.App.P. 47(a). The North Dakota Supreme Court responded that the fault of a suicide victim is to be considered in allocations under the North Dakota comparative fault scheme, unless a duty of care for the suicide victim's well-being accrued to a health care provider on account of the suicide victim's inability to be responsible for his or her own well-being. See Champagne v. United States, 513 N.W.2d 75, 76, 79-81 (N.D.1994). The North Dakota Supreme Court also held that any fault allocated to a suicide victim should be imputed to the parents of that person in a wrongful death action. Id. at 77, 81-82. After supplemental briefing and additional oral argument to this court, we now affirm the trial court.[1]
 
 I.
 
 4
 Our deliberations are complicated by the fact that neither the parties nor the trial court explicitly framed their arguments and conclusions in terms of Mr. Champagne's ability to be responsible for his own well-being, but rather structured their dispute as centering on the nature of the hospital's alleged malpractice, whether Mr. Champagne's suicide was foreseeable without treatment or inevitable even with treatment, and whether that suicide could be considered an intentional act, consciously undertaken. We are thus in the position of having to review the judgment of the trial court in light of a legal standard that was not argued in that court. In other words, our task is to determine whether the trial court's judgment amounted to plain error. See, e.g., Hormel v. Helvering, 312 U.S. 552, 556-57, 61 S.Ct. 719, 721-22, 85 L.Ed. 1037 (1941).
 
 
 5
 In a criminal case, our evaluation would be governed by the case law interpreting Fed.R.Crim.P. 52(b) ("[p]lain errors or defects affecting substantial rights"); see also Fed.R.Evid. 103(d) (with respect to evidentiary rulings, "plain errors affecting substantial rights"). Although there is no equivalent rule in civil procedure, the Supreme Court has described plain error in a civil case as "obvious, or ... otherwise seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings." United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); see also Phillips v. Parke, Davis and Co., 869 F.2d 407, 409 (8th Cir.1989). Federal appellate courts have held, in addition, that for a challenged action to be plain error in a civil case, it must have " 'almost surely affected the outcome of the case.' " Angelo v. Armstrong World Industries, Inc., 11 F.3d 957, 961 (10th Cir.1993), quoting Lusby v. TG & Y Stores, Inc., 796 F.2d 1307, 1312 n. 4 (10th Cir.1986), cert. denied, 479 U.S. 884, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986).
 
 
 6
 We have read the transcript of the bench trial and have considered as well all of the other items in the trial court file. We do not believe that the trial court's failure explicitly to evaluate the evidence in light of the legal standard specified by the North Dakota Supreme Court amounted to plain error. In the first place, we do not believe that the trial court's approach to evaluating the evidence in this case was an "obvious" error, United States v. Atkinson, 297 U.S. at 160, 56 S.Ct. at 392. Indeed, we were so unsure about what legal standard was appropriate that we decided to ask the North Dakota Supreme Court that very question and anticipated that the answer would be either a simple "yes" (a suicide victim's fault should be considered in allocating comparative fault) or "no" (it should not be considered in that allocation). Nor do we believe that the trial court's approach to evaluating the evidence in this case "seriously affect[ed] the fairness, integrity or public reputation" of the trial, id.
 
 
 7
 It is, moreover, apparent to us that the trial court's findings reflect some consideration of the question of Mr. Champagne's ability to be responsible for his own well-being at the time he shot himself. Specifically, the trial court noted that after being interviewed by "an experienced and capable counselor" during his two-day hospitalization, Mr. Champagne was released from the hospital, Champagne v. United States, 836 F.Supp. 684, 686 (D.N.D.1992); that he was told to return that afternoon to see the counselor again and did return (although the testimony was contradictory about whether he saw the counselor at that time), id.; and that three weeks later (three days before he died), he made another appointment for counseling (although he did not keep it), id. at 687. The trial court also found that in response to concerns raised by Mr. Champagne's mother a week before Mr. Champagne died, the counselor "intimated" that Mr. Champagne was "old enough to take care of himself and do what he wanted" and that Mr. Champagne's mother "should not be concerned." Id. In light of those findings, we cannot say that even if the trial court had explicitly used the legal standard specified by the North Dakota Supreme Court, the result would " 'almost surely' " have been different, Angelo, 11 F.3d at 961, quoting Lusby, 796 F.2d at 1312 n. 4.
 
 II.
 
 8
 For the reasons stated, we affirm the judgment of the trial court.
 
 
 9
 JOHN R. GIBSON, Senior Circuit Judge, dissenting.
 
 
 10
 I respectfully dissent. The court today recognizes that the district court has not analyzed the record in this case under the standard enunciated by the North Dakota Supreme Court, namely in terms of Mr. Champagne's capacity to care for his own safety and well-being. I would remand to the district court for analysis under this standard.
 
 
 
 *
 The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted; he took senior status on January 1, 1994, before this opinion was filed
 
 
 [1]
 The Honorable Rodney S. Webb, Chief Judge, United States District Court for the District of North Dakota