—————————————

No. 95-2893

—————————————

Diane Buchanna,                          *
                                         *
            Appellee,                    *    Appeal from the United
                                         *    States District Court
      v.                                 *    for the Eastern
                                         *    District of Arkansas.
Diehl Machine, Inc.,                     *
                                         *
            Appellant.                   *


—————————————

Submitted:  April 12, 1996

Filed:  October 15, 1996
—————————————

Before BEAM, Circuit Judge, MURPHY, Circuit Judge, and NANGLE, Senior
District Judge.[*]

—————————————

NANGLE, Senior District Judge.

     The appellant-defendant appeals from a judgment of $350,000.00 entered
against it on a jury verdict.  Appellant contends that the judgment should
be reversed because the trial court[1] erred in denying its motion for
judgment as a matter of law, the trial court erred when it allowed the
introduction of certain industry standards into evidence at trial and the
trial court erred by creating an appearance of partiality for the
plaintiff.  We affirm.

_____

     [*]      The HONORABLE JOHN F. NANGLE, Senior United States
District Judge for the Eastern District of Missouri, sitting by
designation.

     [1]      The HONORABLE GEORGE H. HOWARD, Jr., United States
District Judge for the Eastern District of Arkansas.

I.

Diane Buchanna was a saw operator for Bassett Wood Products. In 1992, Buchanna had been a saw operator for 18 years and had worked with the same saw for approximately 12 years. The saw she worked with was a Model SL52 industrial straight line ripsaw manufactured by appellant Diehl in 1968. The saw has a 15 horsepower motor and a 14 inch blade and is used to cut a board in half length-wise. All of the blade of the saw, except the top three inches, was enclosed by a metal guard called a sawpit. In addition to guarding the blade, the sawpit served as a sawdust receptacle. A metal door accessed the sawpit and the blade was 12 inches from the door. When the door is opened, or the power is turned off, the motor shuts down but it takes four to five minutes for the blade to coast to a stop. A central vacuum system, not provided by the manufacturer, was used to remove sawdust from several machines including the ripsaw. After its manufacture, but several years before the incident occurred in this case, Diehl provided a number of warning labels that were affixed to the saw.

On December 14, 1992, Buchanna returned from a work break and decided to clean the sawdust out of the sawpit. As she had been instructed by her supervisor, she turned off the saw and then used a piece of wood to stop the blade so that she did not have to wait for it to coast to a stop. Thinking that the blade had stopped, she reached into the sawpit with her left hand to clean out the sawdust. She came into contact with the spinning blade and injured her hand. Her small finger had to be amputated and her hand reconstructed. After plaintiff's injury, her employer installed a T bar outside the sawpit door so that the door could not be opened if the blade, and the T bar, were spinning.

On January 14, 1994, plaintiff filed this diversity products liability action against Diehl alleging theories of strict

liability and negligence. The case was tried to a jury for three days. At trial, Buchanna's expert witness, a failure analyst, testified that the saw was inherently dangerous, and therefore defective, because the sawpit door could be opened while the blade was spinning, because the saw clogged up with debris on a regular basis, and because the lighting at the sawpit door was inadequate for a person to see if the blade was still spinning. During the cross-examination of Buchanna, defense counsel attempted to impeach her with deposition testimony concerning the use of both her hands upon her return to work after the accident. The court allowed Buchanna's counsel to voir dire her in front of the jury, and followed up with questions of its own, to clarify plaintiff's testimony on this point. During Diehl's case-in-chief, Diehl's president testified that the saw met all applicable industry standards and that the use of a piece of wood to stop the blade was safe. Plaintiff, over defendant's objection, introduced American National Standards Institute ("ANSI") standards, approved after the manufacture of the saw, to impeach the president's testimony. At the conclusion of the trial, the jury returned a general verdict for plaintiff for $350,000.00. Diehl moved for judgment as a matter of law, both at the conclusion of Buchanna's case and at the close of evidence. The court denied the motion and this appeal was taken.

II.

A denial of a motion for judgment as a matter of law is reviewed de novo applying the same standard as the trial court. Kaplon v. Howmedica, Inc., 83 F.3d 263, 266 (8th Cir. 1996). Judgment entered on a jury verdict should be affirmed, if viewing the evidence in the light most favorable to the appellee, reasonable persons could differ as to the proper conclusion. Rademaker v. State of Nebraska, 906 F.2d 1309, 1311 (8th Cir. 1990). Arkansas law applies in this diversity action and its interpretation is reviewed de novo. Kaplon, 83 F.3d at 266.

Diehl asserts that judgment as a matter of law is appropriate on Buchanna's strict liability claim because she failed to present substantial evidence that the saw was defective rendering it unreasonably dangerous. Under Arkansas law, a manufacturer is subject to strict liability if the product is supplied in a defective condition which renders it unreasonably dangerous and that defective condition was the proximate cause of the harm. Ark. Code Ann. § 4-86-102(a)(1987). Unreasonably dangerous is defined by statute in Arkansas:

> "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable . . . user who. . . . uses the product, assuming the ordinary knowledge of the community or of similar . . . users . . . as to its characteristics, propensities, risks, dangers, and proper and improper uses, as well as any special knowledge possessed by the particular . . . user . . . or which he or she was required to possess.

Ark. Code Ann. § 16-116-102 (1987). We find that Buchanna presented substantial evidence that the saw was defective and unreasonably dangerous.

Buchanna's evidence that the saw was defective rendering it unreasonably dangerous was primarily supplied by Buchanna's expert, Robert Evans. Evans testified that the saw was inherently dangerous, and therefore defective, mainly because the sawpit door could be opened while the blade was spinning. He also criticized the fact that the saw clogged up with debris on a regular basis and that the lighting at the sawpit door was inadequate for a person to see if the blade was still spinning. Diehl contends that Evans' opinions are not substantial evidence because he "was completely ignorant of the field in which he testified and thus had no basis for his claims". Appellant's brief at 16-17.

Under Arkansas law, "[a] properly qualified expert's opinion constitutes substantial evidence unless it is shown that the

-4-

expert's opinion is without reasonable basis". <u>Ford Motor Co. v. Massey</u>, 855 S.W.2d 897, 899 (Ark. 1993). Diehl cannot argue that Evans was not properly qualified because Diehl did not object to the approval of Evans as an expert by the district court. Trial Transcript at 157. Moreover, there was a reasonable basis for Evans' opinions. Evans testified that he relied on his knowledge, education and background in forming his opinion. <u>Id</u>. at 129. Evans further testified that in forming his opinion, he relied on the operating and maintenance manuals for the machine, the deposition testimony of Buchanna and Diehl's plant manager, photographs of the saw, industry standards and regulations, and drawings of the machine. <u>Id</u>. at 129-30. Diehl had an opportunity to cross-examine Evans to try to show that his opinion had a questionable basis. Such an opportunity was all that was required and the jury was entitled to credit Evans' testimony if it so chose. <u>See</u> <u>Massey</u>, 855 S.W.2d at 899, 900 (stating that if cross-examination shows expert testimony to have weak or questionable basis that goes to weight and credibility of testimony).

Buchanna also contends that two subsequent remedial measures -Diehl's providing of warning labels after manufacture and Bassett's installation of the mechanical interlock device (the T bar) - provide substantial evidence to support the jury's verdict. Federal Rule of Evidence 407 does not require the exclusion of subsequent remedial measures in strict liability cases. <u>See</u> <u>Lockley v. Deere & Co.</u>, 933 F.2d 1378, 1386 (8th Cir. 1991)(holding that evidence of subsequent remedial measure in support of strict liability claim was not precluded by Rule 407). Moreover, these subsequent remedial measures were relevant to show that a different design or warning would have prevented the harm and that it was feasible to include this design or warning before the product was sold. <u>See</u> <u>Robbins v. Farmers Union Grain Terminal Association</u>, 552 F.2d 788, 794, 794 n.5 (8th Cir. 1977). Thus, these measures also constitute evidence supporting the jury's verdict as to the strict liability claim.

In addition to its criticism of Evans' opinions, Diehl contends that there was not substantial evidence that the saw was defective and unreasonably dangerous because Buchanna had worked with the saw for 12 years, had read the safety instructions, was aware of the warning labels on the saw, and knew not to stick her hand in the sawpit door until the blade had stopped spinning. Both Buchanna and Diehl agree that, under Arkansas law, the open and obvious danger rule is not a bar to recovery for a strict liability claim. See Lockley, 933 F.2d at 1383. As it was entitled to do under the law, the jury heard the evidence on this issue and found for Buchanna regardless of any open or obvious danger.

Diehl further contends that Buchanna was required to prove that the machine contained a danger other than that danger posed by all ripsaws. Diehl relies on French v. Grove Manufacturing Co., 656 F.2d 295 (8th Cir. 1981), for this proposition. In French, the Court held that a jury instruction that required plaintiff to prove that the product "contains some danger other than those all cranes pose, which danger was not and would not reasonably be appreciated by an ordinarily prudent person" was not exceedingly clear but was not in error. Id. at 299. This holding does not mean that Arkansas plaintiffs in strict liability cases are required to show a difference between the alleged defective product and all other similar products in every case. Rather, under the Arkansas Products Liability Act, it is evidence that may be considered by the trier of fact. Ark. Code Ann. § 16-116-104(a)(2)(1987).

Diehl also asserts that its motion for judgment as a matter of law should have been granted because Buchanna failed to produce substantial evidence that Diehl was negligent in its design of the saw.[2] The Court disagrees. In Arkansas, an inference of negligence

---

[2] Although Buchanna alleged both negligent design and negligent failure to warn claims, the negligent design claim appears to have been the primary claim at trial and is the negligence claim addressed on appeal by the parties.

arises when a product is shown to be unreasonably dangerous. International Harvester Co. v. Land, 354 S.W.2d 13, 18 (Ark. 1962). Contrary to Diehl's argument, Buchanna showed that Diehl owed her a duty of care by showing their relationship as manufacturer and user of the saw. As discussed above, Evans' expert testimony supports the jury's finding of unreasonable dangerousness. In addition, although subsequent remedial measures are generally excluded by Rule 407 in negligence claims (as the warning labels supplied by Diehl after manufacture would be here), Bassett's installation of the mechanical interlock device would also support the jury's finding of negligence in this case. There is an exception to Rule 407 for subsequent remedial measures undertaken by third parties "because the policy goal of encouraging remediation would not necessarily be furthered by exclusion of such evidence". O'Dell v. Hercules, Inc., 904 F.2d 1194, 1204 (8th Cir. 1990); see also 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 407[01] at 407-11 (1994)("Because the controlling ground for excluding evidence has been the promotion of the policy of encouraging people to take safety precautions, remedial measures carried out by persons not party to the suit are not covered.")(footnotes omitted).

Diehl's argument that other evidence, including compliance with applicable industry standards in place at the time of manufacture and evidence that the saw was as safe as other saws manufactured in 1968, shows that judgment as a matter of law should have been granted is not persuasive. Rather, such evidence merely shows that the jury had competing evidence from which to choose. See Ark. Code Ann. § 16-116-105(a) and 16-116-104(a)(1987). A reasonable jury could have come to the conclusion that Diehl was negligent in its design of the saw. Therefore, the trial court did not err in denying Diehl's motion for judgment as a matter of law.

III.

Diehl's second argument on appeal is that the trial court erred in allowing Buchanna to introduce industry standards promulgated after the saw was manufactured. A district court's admission of evidence over objection is reviewed for an abuse of discretion. United States v. Whitetail, 956 F.2d 857, 861 (8th Cir. 1992). As noted above, Diehl's president, Robert Rozman, who was also chairman of the ANSI committee on wood working machines, was called to testify in Diehl's case-in-chief. He was certified as an expert in standards and state of the art for the wood industry. Trial Transcript at 361. Mr. Rozman testified that the saw in question met all applicable industry standards in 1968. Id. at 362. He also testified that stopping the machine with a piece of wood was not an unsafe practice. Id. at 388.

Buchanna contends that she introduced parts of the subsequently approved ANSI standards to impeach Rozman's credibility in two ways. First, Buchanna contends that in response to Rozman's criticism of the mechanical interlock device, Buchanna asked if anything could have been added to the machine to make it safer. Id. at 386. When Rozman responded that devices to electronically stop the motor were available in the 1980's, Buchanna introduced an ANSI standard, approved in 1978, that mentioned electronic brakes. Id. at 389. Second, Buchanna had Rozman read part of a 1978 standard applying to radial arm saws which stated that stopping blade rotation with a piece of wood should be prohibited. Id.

Diehl contends that admission of the irrelevant subsequent standards was unfairly prejudicial because it implied that Diehl failed to meet the industry standard of applying a blade brake and the error was compounded by the fact that the standard applied to radial arm saws rather than industrial straight line ripsaws. Diehl relies on White v. Clark Equipment Co., 553 S.W.2d 280 (Ark.

1977), to contend that the evidence was irrelevant and should not have been admitted. In <u>White</u>, a man was fatally injured when a trailer moved away from a warehouse dock as he was backing a forklift out of the trailer. The forklift he was driving fell backwards on him. The trailer manufacturer was one of the defendants that the wife of the deceased sued in the wrongful death action. The trial court refused to admit a United States Department of Transportation regulation promulgated after the manufacture of the trailer and after the accident occurred. On appeal, the court held that the evidence had no relevance to the question of whether the manufacturer had exercised ordinary care in its design and manufacture of the trailer. <u>Id</u>. at 281. The court further held that the probative value of the subsequent regulation in impeaching the manufacturer's expert witness was outweighed by the danger of unfair prejudice. <u>Id</u>.

In this case, the relevance and the prejudicial effect of this evidence are close questions, especially given the question of whether this standard applied to industrial ripsaws or only to radial arm saws. Diehl had an opportunity to address these issues on Mr. Rozman's re-direct examination, however. <u>See</u> Trial Transcript at 396. Therefore, we cannot say that the trial court abused its discretion in admitting the evidence.

Even if admission of this evidence were an abuse of discretion, we find that it was harmless error pursuant to Federal Rule of Civil Procedure 61 because, viewed in context of the entire trial, its admission did not affect Diehl's substantial rights. Moreover, as discussed above, substantial evidence other than the subsequent standards supported the jury's verdict in this case. <u>See Brown v. LaCreek Electric Association, Inc.</u>, 939 F.2d 623, 625 (8th Cir. 1991) (holding exclusion of evidence was harmless error because substantial evidence supported the jury's verdict).

IV.

Diehl's third argument on appeal is that the trial court erred by suggesting and allowing Buchanna's counsel to voir dire her on her cross-examination and making clarifying comments of its own in the presence of the jury.  Diehl contends that this conduct created an appearance of partiality by the court toward the plaintiff.  Because Diehl did not object to the court's actions at trial, the judgment may be reversed on this ground only if it is found to be plain error.  Mitchell v. Kirk, 20 F.3d 936, 937 (8th Cir. 1994).  Plain error is an error that "almost surely affected the outcome of the case".  Champagne v. United States, 40 F.3d 946, 947 (8th Cir. 1994)(quoting Angelo v. Armstrong World Industries, Inc., 11 F.3d 957, 961 (10th Cir. 1993)).  Having reviewed the relevant portion of the transcript, we conclude that the trial court's actions did not affect the outcome of the case and, thus, did not constitute plain error.

V.

In sum, we conclude that the trial court did not err in denying Diehl's motion for judgment as a matter of law, did not err in admitting the subsequent industry standards and did not commit plain error by creating an appearance of partiality toward the plaintiff.  Accordingly, we affirm the judgment of the district court.

BEAM, Circuit Judge, dissenting.

Use of evidence of the modification of the saw by Diehl's customer, Bassett, the modification occurring at least twelve years after sale of the saw and the commencement of its use, as proof of a design defect existing at the time of earlier sale, was prejudicial error.  Thus, I would reverse the case and remand the matter for a new trial.

As noted by the court, the saw was manufactured in 1968 and

was sold to Buchanna's employer at least twelve years (and probably many additional years) prior to 1992, the year of the accident.  After the accident, and without Diehl's knowledge, Buchanna's employer extended a shaft through the clean-out door and created a whirling T-bar arrangement designed to prohibit opening the door while the saw blade was in motion.

This, Buchanna contends and the court agrees, was a "subsequent remedial measure" admissible as substantive evidence of a defect in the saw under this circuit's analysis of Federal Rule of Evidence 407.  See Robbins v. Farmers Union Grain Terminal Ass'n, 552 F.2d 788, 793-95 (8th Cir. 1977).[3] Federal Rule of Evidence 407 is, however, in no way applicable to a modification made by a customer of the manufacturer, especially when the alteration is made many years after the sale of the product and without the manufacturer's knowledge.  The admissibility, or not, of this evidence is governed by Federal Rules of Evidence 402 and

---

[3] Only the Tenth Circuit has embraced the reasoning in Robbins and then only partially.  Nine other circuits have squarely rejected Robbins and exclude proof of subsequent remedial measures when offered as substantive evidence of a defect in a product.  See Raymond v. Raymond Corp., 938 F.2d 1518, 1522 (1st Cir. 1991); In re Joint E. Dist. and S. Dist. Asbestos Litig. v. Armstrong World Indus., 995 F.2d 343, 345-46 (2d Cir. 1993); Cann v. Ford Motor Co., 658 F.2d 54, 60 (2d Cir. 1981), cert. denied, 456 U.S. 9670 (1982); Kelly v. Crown Equip. Co., 970 F.2d 1273, 1275 (3d Cir. 1992); Werner v. Upjohn Co., 628 F.2d 848, 856-58 (4th Cir. 1980), cert. denied, 449 U.S. 1080 (1981); Grenada Steel Indus. v. Alabama Oxygen Co., 695 F.2d 883, 886-89 (5th Cir. 1983); Bauman v. Volkswagenwerk Aktiengesellschaft, 621 F.2d 230, 232-33 (6th Cir. 1980); Flaminio v. Honda Motor Co., 733 F.2d 463, 468-70 (7th Cir. 1984); Gauthier v. AMF, Inc., 788 F.2d 634, 636-37, modified, 805 F.2d 337 (9th Cir. 1986); Wood v. Morbark Indus., 70 F.3d 1201, 1206-07 (11th Cir. 1995).  Further, the Judicial Conference of the United States has now recommended to the Supreme Court that Rule 407 be amended to specifically extend the exclusionary effect of the Rule to proof of "a defect in a product, a defect in a product's design, or a need for a warning or instruction," thus, directly overruling Robbins when and if the change is ultimately adopted by the Court and Congress.  Report of the Judicial Conference Cormmittee on Rules of Practice and Procedure, September 1996.

403. The question is: are the facts relevant and, if relevant, are they or are they not unfairly prejudicial? In this case, evidence of this poorly conceived and dangerous customer modification was barely, if at all, relevant and clearly inadmissible according to any reasonable test under Rule 403.

Rule 407 is a rule of exclusion and not inclusion and it so states. The Rule clearly deals with the conduct of a tortfeasor or defendant manufacturer or seller, not a third person not a party to the litigation. Indeed, as the advisory note to the Rule states, the policy underlying the Rule is to promote measures that will lead to safer products even when a defendant believes he or she is not guilty of culpable conduct. As noted in Weinstein's Evidence:

> [b]ecause the controlling ground for excluding [subsequent remedial] evidence has been the promotion of the policy of encouraging people to take safety precautions, remedial measures carried out by persons not party to the suit are not covered [by Rule 407]. Since the person taking the remedial measures is not affected by having the evidence admitted as an admission of fault, the admissibility of the evidence should be governed bythe general relevancy requirements of Rules 401-403 rather than Rule 407.

2 Jack B. Weinstein, et al., Weinstein's Evidence § 407[01] at 407-11 (1992).

The court cites O'Dell v. Hercules. Inc., 904 F.2d 1194, 1204 (8th Cir. 1990) for the proposition that subsequent measures by a third party are an exception to the exclusionary force of Rule 407. O'Dell, if not in error on the point, is wholly inapposite to this case. First, since the evidence at issue in O'Dell was excluded and not admitted under an exception to Rule 407, the statement from O'Dell is pure obiter dictum. Id. at 1203. Second, the statement, citing as its source Farner v. Paccar, Inc., 562 F.2d 518 (8th Cir. 1977), is an incorrect analysis of the holding in Farner. While the Farnar court parrots (and overstates) Robbins, the essential holding was that Rule 407 was inapplicable to a determination of

-12-

the admissibility of this type of evidence.  The court correctly held that the third-party modification "was not barred by Fed. R. Evid. 407." <u>Farner</u> 562 F.2d at 528.  But, as pointed out in <u>Weinstein</u>, the evidence was admissible because it was relevant to one or more of the issues in the litigation not because <u>Farner</u> was a products liability case unaffected by exclusions contained in Rule 407. <u>Id.</u> ("We . . . conclude that the evidence of . . . [third party's] subsequent installation of safety chains, was relevant to the issue of [Paccar's] defective design.") <u>Id</u>.  Relevance under Rule 402 (not admissibility under Rule 407) is the question to be considered in this appeal.

Thus, the post-1992 modification of the saw by Bassett was not made admissible by Rule 407.  Evidence of Bassett's alteration should have been admissible only if it provided relevant proof of a defect in Diehl's 1968 design.  It did not and the evidence should have been excluded. Accordingly, I dissent.

A true copy.

Attest:

CLERK U.S. COURT OF APPEALS EIGHTH CIRCUIT.