Sandy LaFRAMBOISE, individually, and on behalf of her minor son, Robert LaFramboise, Jr., Plaintiff,

v.

Tommy THOMPSON, as the Secretary of the Health and Human Services Department, the Indian Health Service, and the United States of America, Defendants.

No. A4–04–011.

United States District Court, D. North Dakota, Northwestern Division.

Aug. 16, 2004.

Larry M. Baer, West Des Moines, IA, for plaintiff.

David L. Peterson, Bismarck, ND, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion for Summary Judgment filed on July 8, 2004.[1] For the reasons set forth below, the motion is granted.

## I. BACKGROUND

On or about July 15, 2001, the plaintiff, Robert LaFromboise, Jr., a minor, entered the Quentin N. Burdick Memorial Comprehensive Health Care Facility located on the Turtle Mountain Indian Reservation in Belcourt, North Dakota. The Facility is operated by the defendant, the United States of America. LaFramboise was there to treat a head injury he suffered after a fall from his bicycle. Upon arrival, he came under the care of a Dr. Lakhbir S. Sarpal.

On February 9, 2004, the Plaintiff filed this lawsuit asserting medical malpractice on the part of Indian Health Services hospital personnel and physicians allegedly under the control of the defendant, the United States of America. Additionally, the complaint alleged that Robert LaFramboise suffered numerous medical complications as a result of Dr. Sarbal's failure to timely diagnose and treat Robert's head injuries.

The Defendants have moved for dismissal on the grounds that (1) the Plaintiff's claim should be dismissed for failure to provide an expert affidavit within three months of filing the lawsuit; and (2) the claim should be dismissed because Dr. Sarbal was not an employee of the United States but was an independent contractor.

## II. LEGAL DISCUSSION

### A. "LAW OF THE PLACE" UNDER THE FEDERAL TORT CLAIMS ACT

The Plaintiff's claim arises under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2671–2680. Under the FTCA, the United States has waived its sovereign immunity to the following extent:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The United States contends that the "law of the place" refers to the law of the state where the negligence occurred. The Government's position is that North Dakota law should apply. Conversely, the Plaintiff argues that the reference in 28

---

1. Although the Defendant captioned its pleading as a motion for summary judgment rather than a motion to dismiss, the Court will treat the pleading as a motion to dismiss. *See* N.D.C.C. § 28–01–46.

U.S.C. § 1346(b) to "law of the place" should be read to apply tribal law when the negligence in question occurred on the Turtle Mountain Indian Reservation.

Since the FTCA's enactment in 1948, the "law of the place" has meant the law of the state where the negligent act or omission occurred. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 487, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (stating "[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State-the source of substantive liability under the FTCA.") (citing *Miree v. DeKalb County*, 433 U.S. 25, 29, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)); *United States v. Muniz*, 374 U.S. 150, 153, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Richards v. United States*, 369 U.S. 1, 6–7, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Rayonier Inc. v. United States*, 352 U.S. 315, 318, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). This same approach has been used when the negligent act or omission occurred on Indian land located within a state. *See Champagne v. United States*, 40 F.3d 946 (8th Cir.1994); *Goodman v. United States*, 2 F.3d 291 (8th Cir.1993); *Red Lake Band of Chippewa Indians v. United States*, 936 F.2d 1320 (D.C.Cir. 1991); *Seyler v. United States*, 832 F.2d 120 (9th Cir.1987); *Bryant v. United States*, 565 F.2d 650 (10th Cir.1977).

■ While most courts have applied state law in a nearly reflexive manner, recently a small number of courts have been conflicted as to whether tribal law should apply in these circumstances. *Compare Cheromiah v. United States*, 55 F.Supp.2d 1295, 1303–09 (D.N.M.1999) (holding that Acoma tribal law was the law of the place because the tribal court could have jurisdiction over the plaintiffs' claim) *with Louis v. United States*, 54 F.Supp.2d 1207, 1209–10 (D.N.M.1999) *and Federal Express Co. v. United States*, 228 F.Supp.2d 1267, 1268–70 (D.N.M.2002)

(both reaching the opposite result and applying state law). However, even if the court concludes that tribal law is the appropriate law under the circumstances, the court will still apply state law when there is no tribal law on point. *See Williams v. United States*, 242 F.3d 169, 175, n. 2 (4th Cir.2001) (stating that while Cherokee tribal law may be the law of the place, the court could not apply it because there was not a Cherokee law regarding emergency medical treatment).

In this case, the Plaintiff makes no mention of any tribal laws regarding medical malpractice claims. It is unclear whether there would be any tribal laws on point even if jurisdiction could be found with the tribal court. However, in light of the overwhelming case law favoring the application of state law, as well as the use of that approach by the Eighth Circuit, this Court will look to the application of North Dakota law for claims arising under the FTCA. Having recognized that North Dakota state law must be applied to the Plaintiff's claim, this Court will address the relevant state provisions.

**B. *DEADLINE FOR THE DISCLOSURE OF EXPERT OPINIONS***

■ In North Dakota, "a physician is required to exercise such reasonable care and skill as are exercised ordinarily by physicians practicing in similar localities in the same general line of practice." *Anderson v. United States*, 731 F.Supp. 391, 394 (D.N.D.1990) (quoting *Hopkins v. McBane*, 427 N.W.2d 85, 86 (N.D.1988) (citing *Winkjer v. Herr*, 277 N.W.2d 579, 583–84 (N.D.1979))). To set forth a prima facie case of medical malpractice, a plaintiff must establish the applicable standard of care, demonstrate a violation of that standard, and show a causal connection between the violation and the alleged harm. *Id.* at 394 (citations omitted).

Section 28–01–46 of the North Dakota Century Code also requires the plaintiff in a medical malpractice action to file an expert affidavit with the court within three months of the commencement with the action, unless it can be shown that good cause exists for not doing so. The statute reads as follows:

> Any action for injury or death against a physician, nurse, or hospital licensed by this state based upon professional negligence must be dismissed without prejudice on motion unless the claimant has obtained an admissible expert opinion to support the allegation of professional negligence within three months of the commencement of the action or at such later date as set by the court for good cause shown by the plaintiff. The expert's affidavit must identify the name and business address of the expert, indicate the expert's field of expertise, and contain a brief summary of the basis for the expert's opinion. This section does not apply to alleged lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence.

N.D. Cent.Code § 28–01–46 (2003). The purpose of the statute is to minimize frivolous claims against physicians, nurses, and hospitals at an early stage in the proceedings. *Ellefson v. Earnshaw,* 499 N.W.2d 112, 114 (N.D.1993) (citing *Heimer v. Privratsky,* 434 N.W.2d 357 (N.D.1989); *Fortier v. Traynor,* 330 N.W.2d 513 (N.D.1983)). In that regard, the statute acts as a preliminary screening device to rid the court of totally unsupported cases. *Ellefson,* 499 N.W.2d at 114. The statute does not require the plaintiff to establish a prima facie case or complete discovery during the three-month period. Instead, the express wording of the statute simply requires that the plaintiff come forward with an admissible expert opinion to support the allegations of professional negligence or malpractice. *Id.*

■ In the present case, the Plaintiff filed her claim on February 9, 2004. Since that time, the Plaintiff has failed to comply with the expert affidavit requirement. Pursuant to Section 28–01–46, this Court is required to dismiss the action without prejudice because the three-month time period has elapsed, unless an appropriate exception can be found.

The statute does allow for an extension of time to be granted when "good cause" is shown by the plaintiff. N.D. Cent.Code § 28–01–46. The Eighth Circuit has recognized there are two "critical" dates in any medical malpractice action. *Weasel v. St. Alexius Medical Center,* 230 F.3d 348, 353 (8th Cir.2000). The first is the date when the plaintiff files the lawsuit. The second is the date on which the defendant files a motion to dismiss. In *Weasel,* the Eighth Circuit recognized that a plaintiff's motion for good cause to extend the deadline for filing the expert affidavit can be filed after the three-month time period. The Court said a motion for a good cause extension of the deadline can be granted by the trial court if no motion to dismiss for failure to obtain the expert affidavit has been filed before the extension is sought. However, if three-months have elapsed since the commencement of the lawsuit without the plaintiffs' obtaining either the required expert opinion, or a later date for compliance, the statute expressly provides that the court must dismiss the case without prejudice.

The Plaintiff will be unable to benefit from the good cause extension and no effort has been made to seek such an extension to date. The first critical date is

February 9, 2004 when the action was filed. The second critical date is July 8, 2004, when the United States moved for dismissal based on the Plaintiff's failure to comply with the three-month deadline. The Plaintiff missed the three-month deadline and did not file a motion for good cause to extend the deadlines prior to the United States filing a motion to dismiss. As a result, a dismissal of the action without prejudice is the appropriate action under Section 28–01–46.[2]

The last possible exception to the three-month expert disclosure requirement under Section 28–01–46 is the "obvious occurrence" exception. *Larsen v. Zarrett*, 498 N.W.2d 191, 194–95 (N.D.1993). The statute provides specific examples of when an expert opinion is unnecessary including incidents involving "lack of informed consent, unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patients's body, or other *obvious occurrence*." N.D. Cent. Code § 28–01–46 (emphasis added). The obvious occurrence exception applies only to cases that are "plainly within the knowledge of a layperson." 498 N.W.2d 191, 195. In such cases, expert testimony is unnecessary because a layperson would be able to find negligence. *Id.*

In this case, the Plaintiffs' injury does not fall into any of the listed categories. Further, the Plaintiff's injury is not the type that is so "obvious" that a layperson would be able to identify negligence. The Court finds the obvious occurrence exception inapplicable.

### III. *CONCLUSION*

In summary, the Court finds the Plaintiff's claim under the Federal Torts Claim Act are governed by North Dakota law due to the statute's use of the phrase "law of the place." Under North Dakota law, a plaintiff in a medical malpractice action is required to file an expert affidavit within three-months of the commencement of the action unless good cause is shown to extend the deadline, or the injury is of a type that is an obvious occurrence for which no expert opinion is needed. The Court finds the Plaintiff failed to file the required expert opinion affidavit during the three-month period. In addition, no motion for a good cause extension was filed on a timely basis. The head injury at issue is not the type of injury that falls into the obvious occurrence exception to Section 28–01–46. For the reasons set forth above, the Defendants' Motion to Dismiss (Docket No. 5) is **GRANTED.** The above-entitled action is dismissed without prejudice.

**IT IS SO ORDERED.**

**2.** The plaintiff, Robert LaFramboise, Jr., was born on August 12, 1986, and would turn 18 years of age on August 15, 2004. As such, the Court notes that LaFramboise would presently have a viable claim under North Dakota law. *See* N.D. Cent.Code § 28–01–25.