**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2427

_____

Ann Dulany, Trenace White, Jane Doe,      *
Lillian Taylor, Vicky Williams, Larfay     *
Primus, Pamela Williams, Treva             *
Merriweather, Shirley Small, Becca         *
Hughes, Lisa Suter, Carmen O'Neil,         *
Kimberly Collins, Leta Salyer, Lana        *
Anderson, Brenda Foster, Alisa             *
Teuber, Polly Guidorzi, Shirley Allen,     *
Patricia Prewitt, on behalf of             *
themselves and all other prisoners at      *
Chillicothe Correctional Center and        *
Renz Correctional Center,                  *
                                           *   Appeal from the United States
          Plaintiffs-Appellants,           *   District Court for the
                                           *   Western District of Missouri.
      v.                                    *
                                           *
Mel Carnahan, Governor of Missouri,        *
in his official capacity; Dora Schriro,    *
Director, Department of Corrections,       *
Agency of the State of Missouri, in her    *
official capacity; George Lombardi,        *
Director, Division of Adult Institutions,  *
in his official capacity; Dale Riley,      *
Director, Division of Classification and   *
Treatment, Missouri Department of          *
Corrections, in his official capacity;     *
Randee Kaiber, Assistant Director/Health   *

Service, Division of Classification and       *
Treatment, Missouri Department of             *
Corrections, in his official capacity;        *
Brian Goeke, Superintendent of Renz           *
Correctional Center, in his official          *
capacity; Thelma Grandison,                   *
Superintendent of Chillicothe                 *
Correctional Center, in her official          *
capacity; Correctional Medical Systems,       *
Inc., in its capacity as contractual health   *
care provider to Renz and Chillicothe         *
Correctional Centers,                         *
                                              *
        Defendants-Appellees.                 *

_____

Submitted:  February 10, 1997
Filed: December 31, 1997
_____

Before RICHARD S. ARNOLD, Chief Judge, HANSEN, Circuit Judge, and BATTEY,[1]
    District Judge.

_____

HANSEN, Circuit Judge.

The plaintiffs, a group of female inmates from two Missouri state prisons, brought this suit against various state and prison officials pursuant to 42 U.S.C. § 1983 (1994), claiming the defendant state prison officials have been deliberately indifferent to their serious medical needs in violation of their constitutional rights and rights secured under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101- 12213

_____

[1]The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota, sitting by designation.

-2-

(1994).  The district court[2] granted summary judgment in favor of the defendants.  The plaintiffs appeal, arguing that the district court erred in granting summary judgment without allowing them an opportunity for discovery.  They also contend that the district court erroneously made credibility determinations on the deliberate indifference issue, failed to consider the whole record, considered the plaintiffs' claims in isolation, failed to consider the threat of injury from the alleged systemically deficient health care system, and erroneously dismissed their ADA claims.  We affirm.

## I.

The plaintiffs are a group of 20 female prisoners incarcerated in two Missouri prison facilities--the Renz Correctional Center and the Chillicothe Correctional Center.  They filed a complaint on behalf of themselves and all female prisoners incarcerated in Missouri prison facilities, alleging that the Missouri Department of Corrections is providing inadequate medical care for women prisoners.  The plaintiffs also sought to assert the rights of female prisoners with disabilities, alleging that the defendant state prison officials are not complying with the ADA.  The plaintiffs moved for class certification.

The defendants moved to dismiss or in the alternative for summary judgment, supported by physician affidavits, the relevant institutional policies, and many volumes of medical records relevant to the allegations specified in the complaint.  At the same time, the defendants provided the plaintiffs' attorneys with the remainder of the plaintiffs' medical records documenting treatment for conditions that were not addressed in the complaint.  On September 1, 1995, the plaintiffs moved the district court for an extension of time in which to respond to the defendants' motion for summary judgment in order to fully review the medical records and documents

---

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

provided by the defendants. The district court granted the plaintiffs an extra 30 days to respond. The plaintiffs submitted inmate affidavits, affidavits of medical experts, and other documentation in opposition to the defendants' summary judgment motion.

On October 2, 1995, the defendants moved the district court to stay discovery pending the determination of their dispositive motion. In support of their motion for a stay of discovery, the defendants asserted that the volumes of documents they had voluntarily provided were sufficient to evaluate the adequacy of the plaintiffs' medical care. The defendants urged the court not to allow a fishing expedition. The plaintiffs opposed the motion, arguing that summary judgment would be inappropriate before the parties had an adequate opportunity to develop the facts through discovery. On October 5, 1995, the district court entered an order staying discovery.

After reviewing the documents and affidavits submitted by both parties, the district court granted the defendants' motion for summary judgment in part, concluding that 19 of the 20 plaintiffs had failed to create a genuine issue of material fact to indicate that the defendants had been deliberately indifferent to their serious medical needs.[3] Because the named plaintiffs were unable to demonstrate deliberate indifference, the district court denied their motion for class certification. The plaintiffs appeal.

## II.

We review de novo the district court's grant of summary judgment, applying the same standards as the district court. Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th

---

[3]The district court provisionally denied summary judgment as to one plaintiff, Jane Doe, and ordered the plaintiffs to reveal her identity to allow the defendants an opportunity to specifically refute her claim. Thus, her claims will not be discussed in this appeal.

Cir. 1997). Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We look to the substantive law to determine whether an element is essential to a case, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Eighth Amendment, as applied to the states through the Fourteenth Amendment, provides the substantive law for the case at hand. The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide inmates with medical care. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). To prevail on a claim of constitutionally inadequate medical care, the inmate must show that the prison officials' conduct amounted to "deliberate indifference to [the prisoner's] serious medical needs." Id. at 104; see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997).

## A. Discovery

The plaintiffs first contend that the district court erred by granting summary judgment without affording them an opportunity to conduct adequate discovery. We review for an abuse of discretion a district court's determination that a claim is ripe for summary judgment. In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig., 113 F.3d 1484, 1489 (8th Cir. 1997). While the trial court must give the parties adequate time to conduct discovery, see Celotex Corp., 477 U.S. at 322, Rule 56(c) does not require the completion of all discovery before a court may properly grant

summary judgment. In re TMJ Implants Prod. Liab. Litig., 113 F. 3d at 1489. Rule 56(f) allows a party opposing summary judgment to seek a continuance and postpone a summary judgment decision until adequate discovery has been completed. Id. at 1490. When seeking such a continuance, the party opposing summary judgment must file an affidavit with the trial court to show what specific facts further discovery might unveil. Humphreys v. Roche Biomed. Lab., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993). "If a party opposing a summary judgment motion does not seek shelter under Rule 56(f) or otherwise ask for a continuance, a court generally does not abuse its discretion in granting summary judgment based on the record before it." In re TMJ Implants Prod. Liab. Litig., 113 F. 3d at 1490.

The plaintiffs did not file a Rule 56(f) motion and accompanying affidavit articulating that further discovery was essential to their opposition of the defendants' summary judgment motion. The defendants voluntarily produced thousands of pages of documents, including the plaintiffs' medical records, the relevant institutional policies, and physician affidavits summarizing the plaintiffs' medical records and opining that the plaintiffs received medically appropriate and adequate care. The plaintiffs requested a continuance to review and respond to these documents, but they did not therein assert that the documentation was incomplete or that additional specific discovery was necessary in order for them to resist the summary judgment motion. They were granted an additional 30 days in which to respond and then they opposed summary judgment by filing their sworn statements and some physician affidavits. While they asserted in a footnote of their opposition to summary judgment that summary judgment was premature due to the lack of opportunity for discovery, they failed to articulate what specific discovery was lacking that prevented them from adequately resisting summary judgment, nor did they seek a further continuance.

The plaintiffs opposed the defendants' motion to stay discovery but only argued that they were entitled to general information such as the name of each person likely to have discoverable information, a copy of all documents in the defendants' possession

that are relevant to the disputed facts alleged in the pleadings, the identity of any expert witnesses who may be used at trial, and a statement of all opinions to be expressed. Additionally, the plaintiffs asserted they were entitled to tours of the correctional facilities, access to the medical records of every inmate, all quality improvement reports made in response to inmate complaints, and documentation of staffing levels, staffing patterns, and inmate deaths. The plaintiffs said that they sought "to discover critical facts," (Appellants' App. at 199), but they did not articulate what particular critical facts they needed to develop or hoped to unveil.

On appeal, the plaintiffs assert that they would have attempted to discover the defendant prison officials' state of mind by deposing them regarding the medical care provided to inmates and their knowledge of deficiencies in the medical care system. Their intention to unveil these specific facts was not expressed to the district court in either the plaintiffs' resistance to the stay of discovery or in their request for a continuance to review the defendants' documents. Further, the record in this case was not inadequate upon which to make a summary judgment determination, because the defendants provided expert affidavits, the relevant prison policies, and all of the plaintiffs' medical records. Additionally, the plaintiffs responded with their own affidavits and expert affidavits. Thus, this case is unlike prior cases in which we held that the record was inadequate for summary judgment. See Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990) (reversing a grant of summary judgment on a medical deliberate indifference claim where the record contained neither the plaintiff's medical records nor evidence of the appropriate standard of care); Palmer v. Tracor, Inc., 856 F.2d 1131-34 (8th Cir. 1988) (holding summary judgment was premature because the only affidavit on record was an unsworn affidavit of defendant's attorney). Here, the plaintiffs responded to the motion and did not articulate why the lack of discovery prevented them from adequately opposing the motion. Because the plaintiffs did not take appropriate action to delay the entry of summary judgment for the purpose of obtaining additional specific facts necessary to resist the motion, we cannot conclude that the

district court abused its discretion in determining that the case was ripe for summary judgment.  See  In re TMJ Implants Prod. Liab. Litig., 113 F. 3d at 1491.

## B.  Motion to Dismiss

Before turning to the merits of this appeal, we consider the defendants' motion to dismiss.  The defendants move to dismiss the appeals of certain named plaintiffs on the ground that they have been either released from custody or released from the two institutions involved in this case.  The release of these plaintiffs from the prisons renders moot their request for injunctive relief, which was the only remedy they pursued.  See Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991).  Accordingly, we grant the motion to dismiss and dismiss the appeals of Alisa A. Teuber, Kimberly Collins, Brenda Foster, Treva Merriweather, Carmen O'Neil, Leta Salyer, and Trenace White.

## C.  Deliberate Indifference

An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. Coleman, 114 F.3d at 784.  See also Farmer v. Brennan, 511 U.S. 825 (1994).  The plaintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs. Coleman, 114 F.3d at 784.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge."  Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). As long as this threshold is not crossed, inmates have no constitutional right to receive

a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Id. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. Estelle, 429 U.S. at 104-05. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. Id. at 106.

In this case, the district court examined the claims and affidavits of each plaintiff to determine whether she had raised a genuine dispute of material fact on each element of her claim sufficient to survive the summary judgment motion. The district court concluded that while most of the plaintiffs had alleged serious medical needs, none had raised a genuine dispute of fact from which a trier of fact could conclude that the prison officials had been deliberately indifferent to her serious medical needs. The plaintiffs disagree and contend that the district court erred by improperly making factual determinations concerning the defendants' subjective state of mind.

Our review of the record convinces us that the district court did not make improper factual determinations concerning the defendants' subjective state of mind. Rather, for each individual plaintiff, the district court examined the evidence and concluded that the plaintiff had failed either to demonstrate an objectively serious medical need or to refute the medical records presented by the defendants demonstrating that care had been provided. Contrary to the plaintiffs' contention, the district court's indication that many of the plaintiffs had alleged objectively serious medical conditions does not compel an automatic conclusion that the district court made improper fact-findings regarding the defendants' subjective state of mind. Medical records revealed in each instance that the defendants had responded to and provided treatment for the plaintiffs' medical needs. Prison officials can be "found free from liability if they responded reasonably to a risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844. In the face of medical records indicating that

treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment. We have carefully considered the evidence relating to each plaintiff's claims, and briefly summarize them below.

Ann Dulany alleges she has not received medically appropriate treatment for her conditions of Crohn's disease and coronary artery disease. Although diagnosed with a peptic ulcer, she contends no medical evidence supports this diagnosis. She also complains that she has not had a physical examination since 1987. The defendants presented her medical records, which confirm a diagnosis of peptic ulcer but do not confirm a diagnosis of Crohn's disease. One provisional diagnosis noted the possibility of Crohn's disease, but this was not a definitive diagnosis and a later record entered after many diagnostic procedures for abdominal pain ruled out any diagnosis of Crohn's disease. Medical records also indicate that Dulany has been sent to outside consultants who have not concluded she suffers from Crohn's disease. The defendants assert that the recommendations of outside specialists were followed for her coronary artery and heart diseases and that diagnostic procedures and treatment were provided for her peptic ulcer. She alleges that prison officials failed to follow the recommendations of her outside consultants, but a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment. Long, 86 F.3d at 765. Dulany also asserts untimely follow-up care, allegedly indicating disregard of a known risk. She demonstrates no harm from any delay in treatment, however. We agree with the district court's conclusion that Dulany's medical records indicate that prison physicians have actively attended to her needs and provided diagnostic procedures in attempts to determine the cause of her pain; there is no evidence to indicate that the prison medical officials did not respond reasonably to her medical needs.

Lillian Taylor asserts she has not received appropriate mental health care. She complains that she does not receive her medications regularly and that doctors fail to

inquire into essential facts. Her medical records indicate she has seen a psychologist and a psychiatrist on numerous occasions and has been prescribed medication for psychiatric problems. The defendants presented two expert affidavits -- that of her treating physician and that of a psychiatrist -- which stated that Taylor had received appropriate treatment and care. To resist summary judgment, she presented the affidavit of Dr. Rhoda Ruttenberg, who examined her prison psychiatric records. She notes that Taylor was prescribed lithium without a pre-lithium workup and that the first check of lithium levels exceeded the recommended standard. Dr. Ruttenberg concluded that Taylor's record "raises questions about the adequacy of care given this patient." (Appellant's App. at 646.) While this affidavit may indicate possible negligence, it is insufficient to supply an inference of deliberate indifference. Grossly incompetent or inadequate care can constitute deliberate indifference in violation of the Eighth Amendment where the treatment is so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care. Smith, 919 F.2d at 93. Dr. Ruttenberg does not express an opinion that the care provided was grossly inadequate or resulted in any serious harm to Taylor. Taylor fails to provide evidence from which a trier of fact could draw an inference that her medical treatment was grossly inappropriate or evidenced intentional maltreatment.

Vicky Williams suffers seizures. She alleges that the prison medical staff irregularly monitors her blood levels while she is on medications. Her medical records show that she has received both treatment and frequent monitoring, though perhaps not at regular intervals as she would prefer. She acknowledged that the prison medical staff does check her blood levels when she reports feeling that the levels are high. Her own disagreement with the frequency of monitoring her blood levels does not create a question of deliberate indifference as it does not indicate "an unnecessary and wanton infliction of pain" or treatment that is "repugnant to the conscience of mankind." Estelle, 429 U.S. at 105-06.

Larfay Primus has tuberculosis. She complains that she has not received adequate treatment and was not instructed on how to take her medication. Her medical records show that she did receive instruction concerning the medications, that she indicated she understood the information, and that she received treatment, although she was reported as not showing up for her first two treatments. The defendants presented a physician's affidavit stating that she has received adequate treatment. To oppose summary judgment, Primus presents the affidavit of Dr. Armond H. Start, who reviewed her prison medical records and concluded that her record "illustrates that the [prison's tuberculosis] control program is not adequate." (Appellant's App. at 410.) However, Dr. Start's affidavit gives no basis for the conclusion that the tuberculosis control program is not adequate, and he does no more than articulate questions he has. He questions whether the cause of Primus's tuberculosis infection was adequately investigated, why three skin tests were given, and whether she received preventive counseling. The affidavit provides no more than mere speculation about whether the prison officials acted with deliberate indifference, and speculation is not sufficient to survive a motion for summary judgment.

The plaintiffs liken this case to DeGidio v. Pung, 920 F.2d 525 (8th Cir. 1990), but the present case is far afield from the facts of DeGidio. Evidence in DeGidio showed that the prison officials' indifference and negligence toward an outbreak of tuberculosis infections resulted in almost 200 inmates being infected within a few years. For a period of about five years during which the outbreak began and spread, no prison officials were responsible for the supervision, control, and administration of health services at the prison. Id. at 529. To the contrary, in the present case, the Missouri Department of Corrections has contracted with Correctional Medical Services, Inc. to provide general health care to the inmates, and the defendants provided unrefuted expert testimony describing the prisons' medical and mental health care policies as appropriate. Primus is the only plaintiff to raise the issue of the prison's tuberculosis treatment in the complaint, and her medical records indicate that the prison officials

-12-

administered treatment to her. She has failed to present evidence from which to infer that the defendants did not respond reasonably to the risk.

Medical records also indicate that Primus was seen on a continuing basis for an earache and other complaints, though these were not listed in the complaint as a basis for her claim. Dr. Start's affidavit states that Primus's ear infection "was treated with multiple drugs and [Primus] eventually developed a significant disability that may or may not have been prevented by specialty consultation." (Appellants' App. at 417.) The existence of a possible alternate course of treatment, which "may or may not" have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm. See Farmer, 511 U.S. at 844. Primus's records indicate that prison officials tried, albeit unsuccessfully, to treat her ear infection.

Pamela Williams was diagnosed with major depression. She contends that she is not being seen by a psychiatrist and that the prison doctor changes or discontinues her medication without review by a psychiatrist. The defendants presented the affidavit of her treating physician and a psychiatrist, who determined that she received appropriate mental health care. The district court noted that she was seen by a psychologist or psychiatrist 19 times one year, received psychological counseling 20 times another year, and was seen at least 15 times for various other ailments. She submitted the affidavit of Dr. Jeffrey L. Metzner, who examined her psychiatric records. He expressed concern over the fact that her medications appeared to have been changed without direct contact between her and the prescribing physician. In his opinion, it was "very unclear" whether her treatment was adequate to attend to her serious medical needs. (Appellants' App. at 636.) Such an equivocal opinion is not sufficient to give rise to an inference of deliberate indifference. "Grossly incompetent or inadequate care can constitute deliberate indifference" but the care provided must be "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Smith, 919 F.2d at 93. A medical expert opinion that it is "very

-13-

unclear" whether treatment was adequate is simply insufficient to create a question of fact as to deliberate indifference.

Shirley Small suffers from hypothyroidism, heart attacks, constipation, nose bleeds, and allergies. She underwent surgery in 1994 to remove a growth on her tongue and complains she received no follow-up diagnosis. She complains that her medication is not properly dispensed. The defendants presented her records, which indicate that she is seen on a regular basis at the cardiac chronic care clinic, where staff members review her medications. Her disagreement over the course of her treatment does not raise an inference of deliberate indifference, and she has failed to demonstrate harm from any alleged delay in receiving a follow-up diagnosis.

Becca Hughes asserts that she suffers from carpal tunnel syndrome and tendinitis. Among other things, she complains that her outside specialist's recommendations are not followed and she has not been offered the basic surgery for carpal tunnel syndrome. The defendants presented a physician's affidavit stating that she has not been diagnosed with carpal tunnel and that she is receiving appropriate treatment. Prison doctors have sent Hughes to a specialist, prescribed medication, and performed diagnostic procedures for her. The specialist found no indication of carpal tunnel. The latest examination by the doctor who originally said she was symptomatic of carpal tunnel now suspects malingering on her part. In any event, showing that another physician might have ordered different tests and treatment does not show deliberate indifference. Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987).

Lisa Suter suffers from Crohn's disease and complains of problems obtaining necessary medical supplies. She also alleges that she had an abnormal pap smear but no follow-up. There is evidence that she has not always received the needed supplies and that the defendants had trouble obtaining supplies on two occasions, but the medical records generally indicate that supplies were regularly issued to her and that her parents purchased supplies for her when the wrong appliances were ordered.

-14-

Records indicate that when less than the prescribed number of supplies were ordered, it was based on the nurse's belief that Suter may have still had supplies in her possession. Most often, the proper supplies appear to have been ordered. Suter presented the affidavit of Dr. Start, who had reviewed her records. Dr. Start questions whether the prison's medical contractor maintains an adequate inventory of needed medical supplies and whether an employee is responsible for inventory control and ordering supplies. He states that Suter's medical record supports a suggestion of a callous attitude toward providing needed medical supplies. He expresses no other professional opinions with respect to the adequacy of Suter's medical treatment and articulates no professional standard from which he draws his conclusion that the record indicates the suggestion of a callous attitude. Accordingly, his unsupported opinion is not sufficient to create a factual dispute that the prison officials failed to respond reasonably to her serious medical needs, where the medical records indicate that necessary supplies were generally ordered properly.

Lana Anderson suffers from a cardiac condition causing fluctuations in her blood pressure. Prison officials once took her to a hospital for chest pains, but she complains that it took three calls to the prison physician to obtain authorization for a transfer to the hospital and that her condition continued to worsen. Medical records indicate that the emergency room physician determined that her chest pain was non-cardiac, and she was instructed to continue her current medications. She continued to complain of pain and was sent to a diagnostic center infirmary for observation. Records indicate that her blood pressure was monitored and she received treatment on several occasions. The objective portion of the deliberate indifference standard requires a showing of "verifying medical evidence" that the defendants ignored an acute or escalating situation or that delays adversely affected the prognosis given the type of injury in this case. Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997); Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995). Her medical needs were not disregarded, and she has no verifiable medical evidence to indicate that the delay in transferring her to the hospital adversely affected her prognosis. Crowley, 109 F.3d at 502.

Polly Guidorzi complains that she has breast lumps but received no lumpectomy to rule out a recurrence of an original malignancy. She complains that a mastectomy was performed against her wishes and with no pathological findings recorded. The defendants presented medical records indicating that she consented to the procedure. She merely claims that she does not remember signing the consent form and submits the affidavit of Dr. Start who muses that he doubts if her consent was informed. This type of speculation does not create a reasonable inference of deliberate indifference.

Shirley Allen has a history of coronary artery disease. She asserts that on one occasion, she suffered intense chest pains, but correctional staff refused to inform the medical department. She violated prison rules and went to the medical center on her own. The nurse informed her that she could not see a doctor for a week, and Allen collapsed. She saw the doctor the following week. Her medical records do not evidence this occurrence, but indicate extensive treatment for her cardiac condition throughout the period of her incarceration. Allen presents no verifying medical evidence that she suffered any adverse effect on her condition or prognosis from the delay of not seeing the physician on the day she allegedly collapsed. See Crowley, 109 F.3d at 502; Beyerbach, 49 F.3d at 1326.

Patricia Prewitt sought dental care and claims that the prison medical staff extracted the wrong tooth. Medical records show that two teeth needed extraction, and she presented no evidence but her own opinion to refute the medical record. Even assuming her assertion to be true, medical malpractice does not amount to deliberate indifference "merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

The plaintiffs also presented the affidavit of a paralegal who reviewed the prison doctors' affidavits, checking them for accuracy with the medical records. In the paralegal's opinion, not all of the statements in the defendants' expert affidavits are supported by the medical records. The paralegal's affidavit, however, does not amount

to evidence that the defendants acted with deliberate indifference when treating the plaintiffs.

The objective medical evidence indicates that the defendants acted reasonably in response to those plaintiffs who had serious medical needs. The plaintiffs simply have not presented evidence in any particular case that the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of [the] [E]ighth [A]mendment right to be free from cruel and unusual punishment." Smith, 919 F.2d at 93. Contrary to the plaintiffs' assertion, our review of the record convinces us that the district court did not resolve any questions of credibility in this case or improperly disregard the plaintiffs' expert witnesses. Even considering the plaintiffs' experts' opinions, the plaintiffs have failed to present evidence refuting the objective medical records sufficient to give rise to an inference of deliberate indifference.

The plaintiffs contend that the district court erred by evaluating each plaintiff's claim individually and not considering the entire record when determining whether there existed a question of fact on the issue of deliberate indifference. The district court did not consider the affidavits of inmates who are not named as plaintiffs. We, too, decline to consider the affidavits and claims of persons who are not listed as plaintiffs. Unless at least one named plaintiff can demonstrate an actual or imminent injury in fact stemming from the deliberate indifference of prison officials, we have no basis on which to consider either system wide problems or on which to grant system wide relief. See Lewis v. Casey, 116 S. Ct. 2174, 2179 (1996) ("the success of the respondents' systemic challenge [is] dependent on their ability to show widespread actual injury"); Smith v. Arkansas Dep't of Correction, 103 F.3d 637, 643-44 (8th Cir. 1996) (noting a plaintiff must "demonstrate, among other things, either an actual or imminent injury in fact"); see also Alpern v. Utilicorp United, Inc. 84 F.3d 1525, 1539 (8th Cir. 1996) ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal quotations omitted).

While "a remedy need not await a tragic event," Helling v. McKinney, 509 U.S. 25, 33 (1993), the plaintiffs must be able to identify a known and unreasonable risk from which serious damage to their future health is imminent in order to maintain suit. In this case, the objective record of medical care provided to the plaintiffs indicates that prison officials took reasonable steps to alleviate the known risks, and the plaintiffs have neither refuted this medical evidence nor testified to callous comments or actions that could indicate deliberate indifference.

The plaintiffs argue that what is merely negligent in one isolated or individual case may evidence deliberate indifference when it is part of a pattern of conduct on the whole record, citing DeGidio v. Pung, 920 F.2d 525, 532 (8th Cir. 1990). Previously in this case, we distinguished DeGidio, which involved a systemic failure to properly treat tuberculosis, resulting in nearly 200 inmates being infected during a time when the prison had no official supervising or administrating health services for the prison. We held in DeGidio that the prison officials' failure to supervise and organize health services, to offer preventive treatment, and to adequately respond to the outbreak of infection, id. at 529-30, amounted to "a consistent pattern of reckless or negligent conduct [that] is sufficient to establish deliberate indifference to serious medical needs." Id. at 533. Only one active case of tuberculosis is asserted in the complaint of the present case. Others now assert they were not properly tested or treated, but their claims were offered only in resistance to summary judgment, preventing the defendants from responding to their claims. In any event, we have considered the entire record relating to the named plaintiffs, and the situation presented here does not rival that of DeGidio. The defendants presented medical records and expert affidavits indicating that the prison's treatment of tuberculosis is adequate. The plaintiffs' one conclusory expert affidavit does not rebut the defendants' evidence sufficiently to create a question of fact on whether the defendants have reacted unreasonably to the injury or imminent threat of harm from its treatment of tuberculosis. See Miller v. Citizens Sec. Group, Inc., 116 F.3d 343, 346 (8th Cir. 1997) ("A conclusory statement in an affidavit,

however, cannot create a genuine issue of material fact which precludes summary judgment.").

Our role is not to police the adequacy of prison medical systems. The Supreme Court has defined our role as follows:

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution. . . . [T]he two roles briefly and partially coincide when a court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm.. But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If [for example] a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.

Lewis, 116 S. Ct. at 2179 (citation omitted). We conclude that the district court properly examined the claims of each individually named inmate to determine whether she suffered constitutional injury of deliberate indifference to a serious medical need. A number of individual and isolated incidences of medical malpractice or negligence do not amount to deliberate indifference without some specific threat of harm from a related system wide deficiency, which is not present in this case. We are unable to find a single plaintiff who has been injured or is threatened with an imminent threat of harm

by a negligent medical policy, procedure, or treatment recklessly offered or omitted by the defendants.

The plaintiffs also contend the district court improperly concluded that multiple contacts with medical personnel precluded a finding of deliberate indifference, citing Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991). Contrary to the plaintiffs' contention, the district court did not draw the simple conclusion that multiple contacts with medical care providers precludes a finding of deliberate indifference. The court noted that multiple contacts with medical care providers had taken place only to show that the medical record was at odds with a plaintiff's specific contention. For instance, Vicky Williams complained that her blood levels were not being regularly monitored, Pamela Williams complained of difficulty getting to see the prison psychologist or a psychiatrist, and Lana Anderson complained that her blood pressure is not adequately monitored. In each instance, the district court recounted multiple contacts with medical care providers, which the plaintiffs failed to adequately rebut and which contradict the plaintiffs' complaints. The district court did not grant summary judgment on the sole basis that the plaintiffs had multiple contacts with medical care providers but on the plaintiffs' failure to rebut the verified medical evidence with any proof of deliberate indifference to their medical needs.

## D. ADA Claim

The plaintiffs' complaint states that the defendants have violated their rights under the ADA because prison facilities are not accessible to plaintiffs with impaired mobility, prisoners with disabilities are not provided proper physical therapy or assistance needed to participate in prison activities, and they are denied medically necessary equipment to aid their mobility. The only plaintiff to specifically complain of experiencing these problems, however, was Trenace White, whose appeal we have dismissed as moot. The remaining plaintiffs do not assert any specific claims under the

ADA. Accordingly, the ADA issue became moot with the dismissal of Trenace White, and we need not address the district court's resolution of the ADA claims.

## III.

Accordingly, having carefully considered the plaintiffs' arguments and the record, we affirm the judgment of the district court.

RICHARD S. ARNOLD, Chief Judge, concurring in part and dissenting in part.

I join the Court's opinion and concur in the result reached, except with respect to the plaintiff Shirley Allen. In my opinion, her case raises genuine issues of material fact that deserve a trial by jury.

It is undisputed that Ms. Allen had a serious heart condition. There is evidence that on an occasion when she suffered intense chest pains, correctional staff refused to inform the medical department. Ms. Allen went to the medical center anyway, was told that she could not see a doctor for a week, and then collapsed. In fact, she did not see a doctor until the following week.

This seems to me a paradigm case of deliberate indifference. The fact that "[h]er medical records do not evidence [the] occurrence" alleged in Ms. Allen's affidavit, ante at 17, is not relevant at the summary-judgment stage. She is obviously competent to testify as to what happened in respect of her own physical condition. Her testimony is admissible and could be believed by a jury. The absence of mention of the incident in the defendants' medical records may actually cut in favor of the plaintiff, because it may show that defendants covered up the occurrence. If one has a serious heart condition, suffers intense chest pains, and collapses, it seems to me that a trier of fact

could reasonably find that withholding attention from a physician for a week amounts to deliberate indifference to a serious medical need.

For these reasons, I respectfully dissent in part.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.