# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-2010
_____

Dirk Alan Christianson

*Plaintiff - Appellant*

v.

McLean County, a Political Subdivision of the State of North Dakota; Underwood Clinic, P.C., doing business as Washburn Clinic; Jerry Kerzmann, individually, and as Sheriff of McLean County; Kerri Benning, FNP-C, individually, and as Health Care Authority; Ashley Brossart, RN, individually, and as Contract Nurse; John Doe, 1-4, individually, and as McLean County Correctional Officers; John Doe, 5-8, individually, and as McLean County Detention Center Medical Staff

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: February 10, 2026
Filed: May 28, 2026
_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

While in custody, Dirk Alan Christianson's leg became infected and was amputated above the knee. Invoking 42 U.S.C. § 1983, he sued McLean County, its

Sheriff, and the jail nurse (collectively, the County Defendants); eight unnamed John Does; and a family nurse practitioner. He also sued Washburn Clinic and the family nurse practitioner for medical malpractice under North Dakota state law.

The district court[1] granted a motion to dismiss the *Monell* claims and the medical malpractice claims. The district court then granted summary judgment on the deliberate indifference claims in favor of the sheriff, the jail nurse, the family nurse practitioner, and the John Doe defendants. The district court denied an amendment to the complaint to add specific John Does as defendants. Christianson appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Christianson was incarcerated at McLean County Detention Center (MCDC) from December 22, 2018, to April 6, 2019. While there, he requested medical attention seven times. Nine times, he received medical care at outside facilities. On April 2, Christianson showed signs of a high fever. The next day, MCDC staff reported his fever to jail nurse Ashley A. Brossart. She instructed MCDC staff to call Washburn Clinic to evaluate him. For his fever, MCDC staff gave Christianson Tylenol, checked his vitals, and transported him that same day to Washburn Clinic to see Kerri Benning, a family nurse practitioner.

Before his appointment, Nurse Benning reviewed Christianson's medical history and lab work from a previous visit to Washburn Clinic and discussed it with the nurse that had treated him.

Christianson no longer had a fever when he arrived at the Clinic on April 3. Nurse Benning continued assessing him for the reported fever. She checked him for cold and flu symptoms, stomach issues, and asked whether other MCDC inmates were sick. Nurse Benning ordered urine and flu tests. Both tests were negative. She checked Christianson's legs and extremities (he had previously suffered severe

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

-2-

edema).  Concluding Christianson could be at the beginning of a viral process, she ordered him to continue taking Tylenol, rest, hydrate, and to return if his condition worsened or did not improve.  Noting that his blood should be rechecked in five days, Nurse Benning told him that his blood would be checked sooner if his symptoms worsened or did not improve.  She testified that further lab work was not necessary at this April 3 visit since he did not have a fever, and the reported fever began less than 24 hours earlier.

Nurse Benning also addressed Christianson's lowered blood pressure and weight loss, adjusting his medications accordingly.  Based on her assessment, Nurse Benning stated he appeared to be improving.  Christianson said he was feeling better; Nurse Benning believed her treatment was reasonable.  Her diagnosis was that Christianson was over diuresed.  She ordered his Lasix dosage lowered.  She faxed instructions to MCDC staff, stating that if his condition worsened or did not improve, he would need follow-up.

Christianson's fever returned over the next two days.  On April 4 and 5, he received ibuprofen, Tylenol, and a cold pack for his fever.  MCDC staff monitored his temperature, blood pressure, and heart rate.  Christianson said he was "doing all right."  On April 6, he complained of leg pain; however, he attended recreational time, reportedly acting normally.  Later that day, he complained that his knee hurt, but did not request medical care for it.  Even later that afternoon, MCDC staff noticed Christianson crawling on the floor and babbling in his cell.  MCDC staff immediately requested an ambulance to transport Christianson to the Emergency Department at Sanford Health.

At Sanford, doctors diagnosed Christianson with severe sepsis with multisystem organ failure, acute renal failure, left knee cellulitis, possible septic joint, and encephalopathy.  The doctors performed two irrigation and debridement surgeries on his knee on April 7.  On April 8, Christianson was diagnosed with necrotizing fasciitis in his left leg.  His leg was amputated above the knee on April 9.

As a *Monell* claim under 42 U.S.C. § 1983, Christianson sued McLean County and Sheriff Jerry R. Kerzmann in his official capacity. The district court dismissed, ruling the factual allegations contained in the complaint failed to state a claim upon which relief could be granted. *See* **Fed. R. Civ. P. 12(b)(6)**. This court reviews de novo the grant of a motion to dismiss. **Mitchell v. Kirchmeier**, 28 F.4th 888, 895 (8th Cir. 2022).

Under *Monell*, McLean County and Sheriff Kerzmann "can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." **City of Canton v. Harris**, 489 U.S. 378, 385 (1989), *citing* **Monell v. Dep't of Soc. Servs. of City of New York**, 436 U.S. 658, 691 (1978). "A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a "custom or usage" with the force of law.'" **Ware v. Jackson Cnty.**, 150 F.3d 873, 880 (8th Cir. 1998), *quoting* **Monell**, 436 U.S. at 691.

Christianson does not argue that an official policy violated his rights. Rather, he focuses on the absence of policies allowing misconduct so pervasive as to constitute a "custom or usage" with the force of law. He must also allege sufficient facts showing that this custom or usage violated his constitutional rights. **Mitchell v. St. Louis Cnty.**, 160 F. 4th 950, 964 (8th Cir. 2025). "[Christianson] must allege: (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by [McLean County and Sheriff Kerzmann]; (2) Deliberate indifference to or tacit authorization of such conduct by [McLean County's] policymaking officials after notice to the officials of that misconduct; and (3) That [Christianson] was injured by acts pursuant to [McLean County's] custom." **Id.**

The entirety of the facts Christianson alleges in his complaint about his *Monell* claim are:

¶ 91  Kerzmann is a "policymaker" for *Monell* liability purposes.

¶ 92  Before April 9, 2019, McLean County and Kerzmann, with deliberate indifference to the rights of inmates at the MCDC, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern, and practice on the part of its correctional officers and medical staff of failing to provide for the health, safety, and general wellbeing of inmates, including providing proper, basic medical care, monitoring, and protection from medical issues.

None of these allegations state facts supporting an inference of an unofficial custom by McLean County or Sheriff Kerzmann that violated his constitutional rights.  He provides no specifics of a continuing, widespread, persistent pattern of unconstitutional misconduct by McLean County or by Sheriff Kerzmann.  Nor does he provide any facts showing that McLean County or Sheriff Kerzmann ever received notice of the alleged misconduct.

In *Mitchell*, the plaintiff made sweeping allegations, without factual support, that a county had inadequate policies and unconstitutional customs.  These allegations amounted "to 'nothing more than a formulaic recitation of the elements' that cannot support a plausible claim." *Id.*, *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  Christianson argues that his complaint gives "broad allegations sufficient to meet the standards of 12(b)(6)."  To the contrary, these broad allegations do not state a specific municipal policy of McLean County or Sheriff Kerzmann that violated Christianson's constitutional rights.  Nor do the broad allegations describe "misconduct so pervasive among non-policymaking employees of the municipality as to constitute a "custom or usage." *Ware*, 150 F.3d at 880.

Because Christianson's complaint does not state a plausible claim, the district court properly dismissed the *Monell* claim against McLean County and Sheriff Kerzmann.

-5-

## II.

Christianson appeals the summary judgment to Nurse Brossart, Sheriff Kerzmann, and Family Nurse Practitioner Benning in their individual capacities; and to unidentified County Correctional Officers (John Does 1-4) and detention center medical staff (John Does 5-8). "This court reviews de novo a grant of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Smith v. Lisenbe*, 73 F.4th 596, 600 (8th Cir. 2023), *citing* **Fed. R. Civ. P. 56(a)**. This court also reviews de novo a finding that defendants are entitled to qualified immunity. *See* ***Jones v. Faulkner Cnty.***, 131 F.4th 869, 874 (8th Cir. 2025).

Christianson alleges that Sheriff Kerzmann, Nurse Brossart, and Nurse Benning violated his Fourteenth Amendment rights by being deliberately indifferent to his serious medical needs, which proximately caused an infection requiring amputation of his leg. As a pretrial detainee, Christianson is entitled to "at least the same protections that convicted prisoners receive under the Eighth Amendment." *Smith,* 73 F.4th at 600.

The Eighth Amendment prohibits "the infliction of cruel and unusual punishments, which in this context means a state official cannot be deliberately indifferent to a prisoner's serious medical needs." *Id.*, *citing* ***Estelle v. Gamble***, 429 U.S. 97, 104 (1976). "To prevail on a deliberate-indifference claim, the plaintiff must show (1) an objectively serious medical need, and (2) that the defendant knew of and disregarded that need." ***Dantzler v. Baldwin***, 133 F.4th 833, 843 (8th Cir. 2025). "To demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness." ***Vaughn v. Gray***, 557 F.3d 904, 908 (8th Cir. 2009). "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a

substantial risk of serious harm to the detainee." ***Vogt as Tr. For Heirs of Vogt v. MEnD Corr. Care Inc.***, 113 F.4th 793, 797 (8th Cir. 2024). "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association." ***Smith v. City of Minneapolis***, 754 F.3d 541, 547 (8th Cir. 2014).

To maintain his claims against Sheriff Kerzmann, Nurse Brossart, and Nurse Benning, Christianson must provide evidence that an objectively serious medical need existed, and that they each knew of and disregarded that need. ***Dantzler***, 133 F.4th at 843.

Christianson mainly argues that Sheriff Kerzmann and Nurse Brossart delayed the care he required, causing his leg to be amputated. When an inmate alleges that a delay in medical treatment rises to the level of a constitutional violation, the defendant's acts must be "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." ***Dulany v. Carnahan***, 132 F.3d 1234, 1240–41 (8th Cir. 1997).

As for Sheriff Kerzmann, Christianson's expert concludes, without stating specific facts, that Sheriff Kerzmann did not protect Christianson. However, Christianson did not controvert Sheriff Kerzmann's sworn statement that he "had no knowledge of any serious medical need of Dirk Christianson at any time during his incarceration at the McLean County Detention Center from December 2018 through April 2019." Even if Christianson has shown an "objectively serious medical need," he has failed to show that Sheriff Kerzmann "knew of and disregarded the need." ***Dantzler***, 133 F.4th at 843. Christianson's delay-of-care argument against Sheriff Kerzmann fails for the same reason. Christianson did not show any "intentional maltreatment or refusal to provide essential care" by Sheriff Kerzmann. ***Dulaney***, 132 F.3d at 1241. The district court properly granted summary judgment to Sheriff Kerzmann in his individual capacity.

While Christianson was incarcerated at MCDC, Nurse Brossart was under contract to provide on-call nursing services to MCDC inmates. On April 3, Correctional Officer Anna Six told Nurse Brossart that Christianson had a fever the day before. Nurse Brossart instructed CO Six to take Christianson's vitals. Informed of his vitals, Nurse Brossart told CO Six to call Washburn Clinic for an evaluation. Christianson was transported to the Clinic.

Christianson has not shown that Nurse Brossart "knew of and disregarded" his serious medical need. Her acts, which included ordering vitals and immediately referring him to Washburn for a closer evaluation, do not disregard Christianson's serious medical need. Nurse Brossart made a reasoned medical decision to refer Christianson to a higher level of medical care than she could provide on April 3.

Christianson also argues that Nurse Brossart is liable for delaying the care he ultimately received for his leg injury. Nurse Brossart stated she "had no knowledge of any serious medical need Christianson may have had following my call with CO Six on the morning of April 3, 2019, until after he was treated at Sanford Hospital in Bismark." Christianson's expert stated that the jail record does not show anyone notifying Nurse Brossart of Christianson's worsening situation. Nurse Brossart, who did not know about Christianson's medical status after April 3, did not act "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Id.* Because Nurse Brossart did not deny Christianson his constitutional rights, the district court properly granted summary judgment to her.

Christianson's claim against Nurse Benning in her individual capacity under 42 U.S.C. § 1983 also alleges deliberate indifference. He argues that Nurse Benning should have suspected infection and ordered blood tests or labs at his April 3 appointment. He adds that she should have followed up after this appointment. Nurse Benning testified that she believed that further lab work was not medically necessary. When she saw Christianson, he did not have a fever. He was stable and "appeared to be improving." Nurse Benning considered Christianson's complaints of headache, increase in urination, low blood pressure, medical history, vital signs,

weight loss, negative flu and urine tests, and her assessment of him. Nurse Benning diagnosed Christianson as being over diuresed, ordering his Lasix dosage lowered. She instructed Christianson and MCDC staff that he would need further workup if his condition worsened or did not improve. By testing, treating, and diagnosing Christianson, Nurse Benning did not disregard his medical needs. Christianson does not controvert Nurse Benning's testimony. In fact, his own expert stated that Nurse Benning gave "clear instructions … to bring him back for evaluation, but these were unfortunately overlooked." An "exercise of professional judgment, even if negligent, falls well short of deliberate indifference." *A.H. v. St. Louis Cnty.*, 891 F.3d 721, 727 (8th Cir. 2018).

Christianson argues that Nurse Benning failed to diagnose and properly treat his infection, causing "it to go from an infection to sepsis and ultimately necrotizing fasciitis which cased his leg amputation." In *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015), Allard alleged a physician should have diagnosed him with bowel obstruction. Instead, he was diagnosed with "constipation and given extensive treatment for that diagnosis." *Id*. As a result, Allard suffered bowel perforation, causing an emergency surgery and the installation of a colostomy bag for 10 months. While acknowledging the misdiagnosis, this court stated that "while Allard may have established a question of material fact sufficient for a negligent malpractice case, such evidence does not show deliberate indifference." *Id*. at 772. "[A] misdiagnosis does not rise to the level of deliberate indifference." *Id*. Nurse Benning's alleged misdiagnosis that Christianson was suffering from diuresis, not sepsis, does not constitute deliberate indifference. The district court properly granted summary judgment to Nurse Benning.

III.

Nearly four years after filing his original complaint, Christianson filed a motion for leave to amend it, to add ten correctional officers (the John Doe Defendants) to the complaint. The district court denied this motion and granted summary judgment on all claims against them. Christianson appeals, arguing the

district court erred in refusing an amendment to add the John Doe Defendants, and then erred in granting summary judgment to them. This court "review[s] the district court's decision to grant or deny leave to amend for abuse of discretion." *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003). This court reviews de novo a grant of summary judgment. *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 795 (8th Cir. 2019).

"A district court should freely give leave to a party to amend its pleadings when justice so requires, **Fed.R.Civ.P. 15(a)**; however, it may properly deny a party's motion to amend its complaint when such amendment would unduly prejudice the non-moving party or would be futile." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008).

On April 1, 2021, Christianson sued unidentified McLean County correctional officers (John Does 1-4) and detention center medical staff (John Does 5-8) for civil rights violations. The deadline for amendments was August 15, 2022. The discovery deadline was April 1, 2024, and the dispositive motions deadline was October 11, 2024. After all these deadlines, Christianson moved to amend his complaint on January 16, 2025.

Christianson argues that his untimely request was due to the defendants' failure to properly identify the individuals who would be John Doe defendants. The district court disagreed. It noted that every individual Christianson sought to add was disclosed to him four months before the deadline for amendments. He had deposed seven of the John Doe defendants. Christianson's failure to timely seek an amendment could not be attributed to the defendants. Further, this untimely motion to amend was filed after the other defendants moved for summary judgment. Christianson not only sought to amend to add the identities of the John Doe Defendants, he also sought to alter the facts for his claims. The district court ruled that an amendment would prejudice the defendants. *See Hammer*, 318 F.3d at 844–45 (upholding the denial of an amendment "nearly fifteen months after the filing of his original complaint…[A]fter discovery had closed and the [defendant] had moved

for summary judgment"); ***Williams v. Little Rock Mun. Water Works***, 21 F.3d 218, 224–25 (8th Cir. 1994) (upholding the denial of an amendment "some fourteen months after filing the original complaint, [and] six days after the discovery cutoff date.").

Christianson knew of all the John Doe Defendants' identities for about 32 months before moving to add them as defendants. He filed his motion over 28 months after the deadline for amendments. Allowing Christianson to amend his complaint would have resulted in undue prejudice to all the defendants. *See **id.*** at 225. The district court did not abuse its discretion by denying Christianson's motion to amend his complaint.

Christianson also argues that the district court had no jurisdiction to rule on summary judgment against the John Doe defendants. To the contrary, dismissal of John Doe defendants at the summary judgment stage is appropriate where the plaintiff did not identify or serve them. *See **Phelps v. U.S. Fed. Gov.***, 15 F.3d 735, 739 (8th Cir. 1994) (dismissal of unknown defendants was proper at the summary judgment stage); ***Cantrell v. Huckabee***, 433 Fed. Appx. 488, 490 (8th Cir. 2011) (during summary judgment stage, "the district court did not abuse its discretion in dismissing the John Doe defendant, since Cantrell never identified him, much less served him, during the two years between the filing of his complaint and the district court's order dismissing John Doe"). While ruling on summary judgment, the district court had jurisdiction to dismiss the John Doe defendants.

IV.

Christianson sued Washburn Clinic and the family nurse practitioner for medical malpractice under North Dakota state law. The district court dismissed this claim, ruling he failed to timely serve an expert affidavit as required under N.D.C.C. § 28-01-46. Christianson appeals. This court reviews de novo a motion to dismiss. ***Mitchell v. St. Louis Cnty.***, 160 F. 4th at 956.

Washburn Clinic and Nurse Benning moved to dismiss the state medical malpractice claim against them because a medical expert's affidavit was not timely served. *See* **N.D.C.C. § 28-01-46** (requiring service of "an affidavit containing an admissible expert opinion to support a prima facie case of professional negligence within three months of the commencement of the action."). "The court may set a later date for serving the affidavit for good cause shown by the plaintiff if the plaintiff's request for an extension of time is made before the expiration of the three-month period following commencement of the action." *Id.* The district court originally granted Christianson an extension of time to file the affidavit; however, the district court later reversed itself, ruling that the expert's affidavit was not timely filed and dismissing the claim.

Christianson appeals this dismissal, arguing that he timely served his expert affidavit in accordance with the North Dakota statute. He argues that although his complaint was filed on April 1, 2021, he also delivered a Notice of Lawsuit and a Request to Waive Service of Summons for the Washburn Clinic and Nurse Benning on April 7. Attorneys for Washburn Clinic and Nurse Benning signed the waiver on April 8. Christianson filed the waiver with the district court on April 30. He argues that under the statute, the "commencement of the action" should be April 30, giving him three months to serve the requisite affidavit. Because he served the affidavit on July 6 (within three months of either April 8 or April 30), Christianson concludes that the affidavit was timely served in accordance with the statute. Washburn Clinic and Nurse Benning counter that the "commencement of the action" was April 1, when he filed his complaint.

"A plaintiff who asserts a medical malpractice claim must file an expert affidavit with the court within three months of *filing the suit*, unless good cause is shown." **Weasel v. St. Alexius Medical Ctr.,** 230 F.3d 348, 350 (8th Cir. 2000) (applying N.D.C.C. § 28-01-46 in a diversity case) (emphasis added), *followed without addressing the italicized phrase*, **Bride v. Trinity Hosp.**, 927 N.W.2d 416, 420 (N.D. 2019). The filing of the complaint begins the three-month deadline. *See* **Weasel**, 230 F.3d at 350, 351 n.3; **LaFramboise v. Thompson**, 329 F.Supp.2d 1054,

1057 (D.N.D. 2004) (ruling that "when the action was filed" begins the time to file the requisite affidavit), *aff'd*, 439 F.3d 792 (8th Cir. 2006).

Christianson's action commenced on April 1, 2021, when he filed suit in federal court. The three-month period ended July 1, 2021, for service of an expert affidavit (or an extension to do so). The district court correctly ruled that Christianson's affidavit was not timely served and dismissed Christianson's state medical negligence claim.

While this appeal was pending, the Supreme Court decided *Berk v. Choy*, 607 U.S. 187 (2026), relying mainly on *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 398 (2010). The Court voided a state law requiring an expert affidavit to accompany a medical malpractice complaint, holding it conflicted with Fed. R. Civ. P. 8. **Berk**, 607 U.S. at 195-96. Christianson did not raise this issue at the district court or before submission of this case. He has at least forfeited the right to rely on *Berk*. "In our adversarial system of adjudication, we follow the principle of party presentation." **Clark v. Sweeney**, 607 U.S. 7, 9 (2025), *quoting* **United States v. Sineneng-Smith**, 590 U.S. 371, 375 (2020). "The parties 'frame the issues for decision' while the court serves as 'neutral arbiter of matters the parties present.'" **Id**., *quoting* **Greenlaw v. United States**, 554 U.S. 237, 243 (2008).

In fact, at oral argument, Christianson stated:

> . . . I sort of actually elected not to bring in *Shady Grove* and those arguments. I'm not immune to that knowledge. . . . I felt that this case was much more clear on when the case was commenced under North Dakota law and as a consequence went down that route.

"The principle of party presentation counsels against adopting theories of a plaintiff's case that he does not advance, much less one that he expressly disclaims." **Ivey v. Audrain Cnty.**, 968 F.3d 845, 851 (8th Cir. 2020). Christianson has waived any theory relying on *Berk v Choy*.

-13-

\* \* \* \* \* \* \*

The judgment is affirmed.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I concur except as to the Court's decision to affirm the grant of summary judgment in favor of the John Doe defendants in Part III and to affirm dismissal of the state medical malpractice claim in Part IV.

I agree that the district court did not abuse its discretion when it denied Christianson leave to amend. But when a plaintiff fails to timely identify John Doe defendants, the appropriate remedy is dismissal without prejudice—even if the case has otherwise progressed to the summary judgment stage. In <u>Cantrell</u>, for example, we affirmed dismissal without prejudice[2] of claims against—not summary judgment for—a John Doe defendant because the plaintiff "never identified him, much less served him[.]" <u>Cantrell</u>, 433 F. App'x at 490 (citing Fed. R. Civ. P. 4(m)). This was so even though we also affirmed summary judgment in favor of the named defendant. <u>Id.</u> Similarly, in <u>Phelps</u>, we held "that the district court did not err by dismissing the 'unknown defendants' without prejudice[.]" <u>Phelps</u>, 15 F.3d at 739. This approach is consistent with Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice[,]" absent a "show[ing] of good cause for the failure[.]"). Here, the district court granted summary judgment to the Doe defendants not on the merits, but because Christianson did not timely identify them. Under these circumstances, I would vacate the grant of summary judgment as to the Doe defendants and remand for the district court to dismiss the claims without prejudice instead.[3]

---

[2]<u>Cantrell v. Huckabee</u>, No. 5:05CV00157-JMM/BD, 2007 WL 1520991, at \*1 (E.D. Ark. May 21, 2007) (specifying the dismissal was "without prejudice").

[3]Christianson filed a second case, based on the same allegations, against the John Doe defendants—but this time, he identified them. <u>See</u> <u>Christianson v.</u>

-14-

As to Christianson's state medical malpractice claim, I agree that Christianson failed to raise any argument relying on <u>Shady Grove</u>. But I disagree that Christianson forfeited any argument relying on <u>Berk</u>, which was decided after the parties submitted appellate briefing but before the appeal was argued. <u>See</u> <u>Berk</u>, 607 U.S. 187 (decided Jan. 20, 2026). During oral arguments, we asked Christianson's attorney whether he was familiar with <u>Berk</u>. He replied, "No, I am not." Christianson later submitted a letter pursuant to Rule 28(j) stating, "Christianson has not waived <u>Berk</u>'s protections. At oral argument, Appellant's counsel was unaware of the newly issued <u>Berk</u> opinion." <u>See</u> Fed. R. App. P. 28(j). Christianson went on to make various legal arguments analogizing his case to <u>Berk</u> and explaining why the party presentation principle should not here apply. I would remand to the district court to consider <u>Berk</u>'s impact on Christianson's medical malpractice claim in the first instance.

———————————————————

<u>Wicklander,</u> No. 1:25-CV-072, 2026 WL 237605 (D.N.D. Jan. 29, 2026). That case was dismissed with prejudice on res judicata grounds—based on the grant of summary judgment in this case. <u>Id.</u>